Haldane M. PLUNKETT, Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

No. 71–1084.

United States Court of Appeals, Seventh Circuit.

July 10, 1972.

Argued Dec. 3, 1971.

Decided July 10, 1972.

Raymond J. Smith, Chicago, Ill., for petitioner-appellant; Arthur N. Nasser, Chicago, Ill., of counsel.

Fred B. Ugast, Acting Asst. Atty. Gen., Bruce I. Kogan, Gilbert E. Andrews, Elmer J. Kelsey, Attys., Tax Division, Dept. of Justice, Washington, D. C., for respondent-appellee.

Before KERNER *, PELL, and SPRECHER, Circuit Judges.

PELL, Circuit Judge.

In 1968, taxpayer Haldane M. Plunkett filed two petitions in the Tax Court challenging the Commissioner's determinations regarding deficiencies in income tax, additions to tax, and alleged overpayments. The two petitions, one involving the years 1957 through 1959 and the other 1960 through 1963, were consolidated for trial and decision.[1] On Oc-

---

* Judge Kerner heard oral argument but did not participate in the adoption of this opinion.

1. A petition filed by the appellant's wife, Dorothy Plunkett, for a redetermination of deficiencies and additions to tax was

tober 2, 1970, the Tax Court entered its decisions sustaining a deficiency of $9,-504.96 for the taxable year 1957 and additions to tax under 26 U.S.C. § 6653(b) [2] of $35,141.10 for the years 1957 through 1963.[3] After the Tax Court denied his petition for reconsideration, Plunkett appealed to this court.

During the years in question, the taxpayer ran a food catering business with the assistance of Mrs. Plunkett. Both Plunkett, who has had little formal education, and his wife are allegedly untutored in the intricacies of bookkeeping and accounting. The taxpayer did not maintain any formal records for his business nor did he retain a bookkeeper or accountant to do so for him. He did, however, keep a customer order book which reflected each catering event and, in most instances, the amount charged therefor. He also separated paid bills from unpaid bills and retained them in different drawers.

Plunkett timely filed original individual income tax returns for the years 1957 through 1959 and original joint returns for the years 1960 through 1963. The original returns for 1957, 1958 and 1959 were prepared by others on the basis of information supplied by Plunkett. To compute the net income shown on those returns, the taxpayer had estimated his total expenses and deducted that amount from his estimated gross receipts or else he had deducted the total estimated expenses from the amount that he had deposited in his bank account.

During this period, Plunkett engaged in transactions in the stock market and in the commodity futures market. He subscribed to a security advisory service and maintained a margin account with a brokerage house, which periodically sent him information concerning his account and periodically credited cash dividends to the account.

Although Plunkett knew that dividends were taxable income, he failed to report such income for the taxable years 1957, 1958 and 1959. In his testimony in the Tax Court, he attributed this omission to his claimed belief at the time that dividends credited to an account need be reported only if they are withdrawn from the account. Plunkett did not withdraw any dividends during 1957, 1958 or 1959.

In about December 1963, the taxpayer became concerned with the manner in which he was handling his tax matters, and in early 1964, he consulted an alderman who helped him find an attorney to advise him. Shortly after Plunkett began working with the attorney, a revenue officer conferred with Plunkett, his wife, and one of his employees about the employee's tax affairs. At this time, late June 1964, the IRS had not assigned an agent to examine Plunkett's income tax returns.

On the advice of his attorney, Plunkett decided to file amended returns for the years 1958 through 1963. (Counsel recommended that no amended return be prepared for 1957.) With the help of a CPA, Plunkett completed this task by the end of July. The returns were based on information that had been available to the taxpayer when he had filed originally. On August 6, 1964, Plunkett filed the amended returns and paid the additional taxes shown on them, plus interest. The Commissioner generally accepted the new returns as reflecting accurately

---

also consolidated for the trial. The results of that redetermination are not involved in the appeal before us.

2. Subsection (b) of 26 U.S.C. § 6653, "Failure to pay tax," provides in part:

  "(b) Fraud.

  If any part of any underpayment (as defined in subsection (c)) of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. In the case of income taxes . . ., this amount shall be in lieu of any amount determined under subsection (a) . . . . "

3. Judge Quealy's memorandum findings of fact and opinion of Sept. 29, 1970, are unofficially reported at 29 CCH Tax Ct. Mem. 1237 [CCH Dec. 30,349 (M)].

Plunkett's income, expenses and deductions for 1958 through 1963.[4]

Subsequent to August 11, 1964, IRS agents conducted a criminal investigation of Plunkett's original and amended returns. On the basis that the amended returns "spoke for themselves," Plunkett and his represenatives declined any cooperation during the course of the criminal investigation. In December 1966, a four-count indictment was returned against Plunkett and his wife for violating 26 U.S.C. § 7201 with respect to their joint income tax returns for the years 1960 through 1963. The defendants entered pleas of not guilty. Plunkett later changed his pleas to nolo contendere upon his counsel's understanding that the Government would then move to dismiss the indictment as to Mrs. Plunkett. However, the Government objected to the tendered pleas and stated that it would not move to dismiss. Plunkett, by his attorney, thereupon withdrew his tender of the nolo contendere pleas and pleaded guilty. Following a colloquy between Plunkett and the district court, the court entered the guilty pleas and granted the Government's motion to dismiss Mrs. Plunkett.

Plunkett was sentenced to three years' probation on each count of the indictment, the sentences to run concurrently on the condition that he serve 90 days of the probation in a "jail type" institution. He was also fined $20,000. Before the commencement of the jail term, Plunkett, then aged 73, suffered a stroke, and the court vacated the imposition of the 90 days' imprisonment. Plunkett has never appealed from the conviction or sentence in the criminal case.

In the civil suit in the Tax Court below, the Commissioner introduced evidence as to the years 1957, 1958 and 1959 to meet his burden of proving fraud on the part of the taxpayer. However, to sustain the fraud penalties for the years 1960 through 1963 he relied entirely on the original and amended returns and the doctrine of collateral estoppel, based on Plunkett's criminal conviction.

Plunkett's first contention is that the Tax Court erred in finding that a part of his underpayments of income tax for the years 1957, 1958 and 1959 was due to fraud with intent to evade tax within the meaning of 26 U.S.C. § 6653(b) so as to render the petitioner liable for the "fraud penalty" addition to tax. More particularly, Plunkett argues that the court improperly ignored his defense of voluntary disclosure and that the Commissioner failed to satisfy the "clear and convincing evidence" standard.

▌ Contrary to the Commissioner's assertion, we think that the record supports Plunkett's claim that his disclosure of the inaccuracies in his original returns was voluntary. He had filed amended returns for the years 1958 through 1963 before the criminal investigation of his tax affairs was initiated. The conferences between the Plunketts and Internal Revenue Service agents prior to the time the amended returns were filed concerned the tax returns of one of Plunkett's employees; that is, the peti-

4. The original and amended returns for each of the years 1957 through 1963 reported taxable income and net tax due (including self-employment tax) as follows:

| | Original Returns | | Amended Returns | |
|---|---|---|---|---|
| Year | Taxable Income | Income Tax | Taxable Income | Income Tax |
| 1957 | $ 5,445.23 | $1,357.51 | $ — | $ — |
| 1958 | 12,611.62 | 3,804.75 | 40,147.89 | 19,512.43 |
| 1959 | 4,460.69 | 1,139.78 | 43,685.38 | 19,775.34 |
| 1960 | 6,166.56 | 1,492.64 | 32,695.45 | 10,473.05 |
| 1961 | 6,312.10 | 1,524.66 | 35,460.82 | 12,346.41 |
| 1962 | 6,544.65 | 1,585.42 | 18,679.54 | 5,056.64 |
| 1963 | 8,245.60 | 1,673.24 | 39,955.96 | 14,121.48 |

According to the statutory notice for 1957–1959, Plunkett's taxable income for 1957 was $26,792.88, and his income tax due was $10,862.47.

tioner was involved only as the employer of a person being investigated.

We cannot therefore conclude, however, that the United States Attorney was foreclosed from prosecuting Plunkett or that the Commissioner of Internal Revenue was precluded from pursuing civil remedies, including the imposition of fraud penalties, against a taxpayer whom he believed evidence showed to have filed false and fraudulent original returns. The IRS may have an informal policy of sometimes not seeking full sanctions against an errant taxpayer who voluntarily and prior to the initiation of an IRS investigation files amended returns and pays the additional taxes due, but it is not required to follow that policy of leniency. *Cf.* United States v. Shotwell Mfg. Co., 225 F.2d 394, 397–398 (7th Cir. 1955), cert. denied on the cross petition, 352 U.S. 998, 77 S.Ct. 552, 1 L.Ed.2d 544, and the decision vacated on other grounds, 355 U.S. 233, 78 S.Ct. 245, 2 L.Ed.2d 234 (1957).

Although we find that such admissions create no legal bar, we appreciate the irony that—as Plunkett points out—a taxpayer may thereby become the unintended victim of his own defensive maneuvers. An objective observer might well come to the conclusion that the combination of criminal and civil penalties visited upon Plunkett was unduly harsh under the circumstances here involved. Nevertheless, it is apparent that one of the calculated risks of tax evasion, as well as of the violation of any criminal law, is that the full measure of the law's retribution may be asserted by way of demonstrating its irrefragability.

We turn then to the second prong of the petitioner's challenge.

■ It is well established that whether an underpayment of income is due to fraud is a question of fact. "[A]lthough . . . this is a fact which the Commissioner is required to prove by clear and convincing evidence, it, like other findings of fact, will not be upset unless clearly erroneous. . . ." Archer v. Commissioner of Internal Rev-

enue, 227 F.2d 270, 274 (5th Cir. 1955). See also Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 291, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960). To meet his burden of proof, the Commissioner need not prove the precise amount of the underpayment resulting from fraud, but only that "any part" of the underpayment is attributable to fraud. *See* Estate of W. Y. Brame v. Commissioner of Internal Revenue, 25 T.C. 824 (1956), aff'd per curiam, 256 F.2d 343 (5th Cir. 1958). We are also mindful that fraud may be established by circumstantial evidence and that the taxpayer's background and the context of the events in question may be considered, *e. g.*, Gano v. Commissioner, 19 B.T.A. 518, 532 (1930).

■ Applying these principles to the present case, we hold that the Tax Court's finding was not clearly erroneous. The court had a sufficient basis for sustaining the Commissioner's determination that Plunkett filed false and fraudulent income tax returns for 1957, 1958 and 1959 within the purview of section 6653(b).

The factors that the court cited adequately support its finding that Plunkett "was more than grossly negligent. . . ." 29 C.C.H. Tax Ct.Mem. at 1246. Among the factors considered were: Plunkett's being a person of at least average intelligence and average business understanding; his success as a businessman; his long experience in investing in the stock market; his failure to maintain proper books and records of his business receipts; his further failure to utilize fully what information he did have at the time the original returns were prepared so as to facilitate the accurate reconstruction of his taxable income; and his consistent and substantial understatement of income on his original tax returns.

■ Plunkett calls to our attention the fact, which the Commissioner does not contest, that his estimates of his business expenses on the original returns were much lower than his actual ex-

penses.[5] He argues that this belies his supposed fraudulent intent.

We agree that this circumstance is not without significance. However, because Plunkett understated his receipts by $35,649.76 more than he understated his expenses—resulting in a concealed net profit—we cannot fault the Tax Court for finding that that element of the misreporting was insufficient to counteract the combined force of all the other factors listed above.[6]

■ Our resolution of the first issue raised by Plunkett controls our disposition of the second issue: whether the Tax Court erred in finding that the statute of limitations did not bar the assessment and collection of a deficiency in income tax for 1957, where no assessment for 1957 had been made within three years from the filing of the return for that year.

It is true that, as a general rule, the amount of any deficiency in income tax must be assessed within three years after the return was filed. 26 U.S.C. § 6501. But in the case of a false or fraudulent return with the intent to evade tax, the tax deficiency may be assessed at any time. 26 U.S.C. § 6501(c) (1). The Tax Court was therefore correct in holding that the statute of limitations had not run against the Commissioner.

■ The taxpayer next urges that he was entitled to receive credit for or a refund of overpayments of tax he made for 1958 and 1959 resulting from carrying forward to those years a capital loss incurred in 1957. This carry-forward loss was not reflected in the original or the amended returns filed by Plunkett for 1958 and 1959.[7] The Commissioner contends that, because the taxpayer did not timely file a claim for refund, the statute of limitations bars him from receiving any credit or refund of the overpayments of tax. In rebuttal, Plunkett asserts that he should not be barred from recovering by any statutory limitations period because the Commissioner, having proven fraud for the years 1958 and 1959, is not restricted by any time limitation in the assessment of deficiencies and penalties for those years. "[T]he years should be open for all purposes including refunds."

The Tax Court did not pass on Plunkett's claim for a refund because it erroneously believed that the Commissioner had given the petitioner full credit for the overassessments in his recomputation of taxes and penalties for the years in question.[8] Rather than remanding the

---

5. For the years 1957, 1958 and 1959, Plunkett understated his business expenses by a total of $326,294.78.

6. The record shows that the sizable understatements of income resulted from taxpayer's total failure to report his dividend income as well as from his understating the receipts and profits of his catering business. From 1957 through 1959, Plunkett received $37,203.60 in cash dividends which were credited to his margin account and of which he was notified by his stockbrokers. Although the Tax Court decided that it did not need to consider whether petitioner's omission of this dividend income was due to fraud with intent to evade taxes, the Commissioner argued in his appellate brief that the omission of such income was further evidence of Plunkett's fraudulent intent, citing Irolla v. United States, 390 F.2d 951, 954, 82 Ct.Cl. 775 (1968), and Lusk v. Commissioner of Internal Revenue, 250 F.2d 591, 594–595

(7th Cir. 1957), cert. denied, 357 U.S. 932, 78 S.Ct. 1376, 2 L.Ed.2d 1375 (1958).

7. In its investigation of Plunkett's returns for the years 1957 through 1959, the Internal Revenue Service had determined that Plunkett had incurred capital losses that were not reflected in the returns. It advised him of this in the notice of deficiency dated July 11, 1968.

8. The Commissioner did in reality carry forward the 1957 capital losses in arriving at the figure to which the 50 percent penalty under 26 U.S.C. § 6653(b) would be applicable. Thus, the amended return for 1958 showed income tax of $19,512.43, which was paid. In effect, this figure, however, was reduced by (a) the amount paid in the original return and (b) the amount of the 1957 carryover applicable to 1958. The penalty was based on the remaining balance of $13,117.80 and not on the tax actually paid. The same procedure was followed for 1959.

case to the Tax Court, we have decided to settle the dispute since it involves a matter of law only.

Although Plunkett's proposition that "the government should not have any greater advantage than the [taxpayer]" sounds appealingly evenhanded, unfortunately it has no support in the cases or in the existing statutes. Claims for credit or refund of an overpayment of tax are required to be filed within three years from the time the return respecting the overpaid tax was filed or within two years from the time the tax was paid, whichever expires the later. 26 U.S.C. § 6511(a). Generally, after the expiration of those time periods, the taxpayer is barred from receiving credit or refund unless he had timely filed his claim. 26 U.S.C. § 6511(b) (1). Plunkett cannot meet these requirements. He also cannot satisfy the conditions set out in 26 U.S.C. § 6511(c) and 26 U.S.C. § 6512.

Finally, Plunkettt argues that the Tax Court erred in determining that his conviction in 1967 for income tax evasion for the years 1960 through 1963 collaterally estopped him in the subsequent civil proceedings from denying that the returns for those years were fraudulent. The Commissioner introduced no affirmative evidence of fraud in the Tax Court but relied on the returns and Plunkett's plea of guilty and his criminal conviction to sustain the imposition of the 50 percent "fraud penalty," 26 U.S.C. § 6653(b).

Most courts faced with the question have held that a prior conviction for tax evasion after a trial on the merits operates as a collateral estoppel on the issue of civil fraud in a fraud penalty proceeding. The criminal conviction necessarily carries with it the ultimate factual determination that the underpayments of tax were "due to fraud" within the meaning of section 6653(b). *E. g.*, Moore v. Unit-

ed States, 360 F.2d 353 (4th Cir. 1965), cert. denied, 385 U.S. 1001, 87 S.Ct. 704, 17 L.Ed.2d 541 (1967); Armstrong v. United States, 354 F.2d 274, 173 Ct.Cl. 944 (1965); Tomlinson v. Lefkowitz, 334 F.2d 262 (5th Cir. 1964), cert. denied, 379 U.S. 962, 85 S.Ct. 650, 13 L.Ed.2d 556 (1965); Amos v. Commissioner of Internal Revenue, 43 T.C. 50 (1964), aff'd, 360 F.2d 358 (4th Cir. 1965). Two recent decisions of the Tax Court reiterate this principle, C.B.C. Super Markets, Inc. v. Commissioner of Internal Revenue, 54 T.C. 882 (1970), and Rodney v. Commissioner of Internal Revenue, 53 T.C. 287 (1969).

Plunkett does not contest the validity of this rule, but he does maintain that it is inapplicable under the special circumstances of his guilty plea.

We note that there is strong authority holding that a guilty plea is an admission of all the elements of a formal criminal charge. McCarthy v. United States, 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969); Kercheval v. United States, 274 U.S. 220, 223, 47 S.Ct. 582, 71 L.Ed. 1009 (1927).

In Arctic Ice Cream Co. v. Commissioner of Internal Revenue, 43 T.C. 68 (1964), a corporate taxpayer was held to be collaterally estopped from denying fraud in a civil proceeding by its previous conviction for tax evasion based upon a guilty plea. In upholding the imposition of a civil fraud penalty, the court declared:

"It is not material that Arctic's conviction was based upon a guilty plea, because for purposes of applying the doctrine of collateral estoppel, as well as for other purposes, there is no difference between a judgment of conviction based upon such a plea and a judgment of conviction rendered after a trial on the merits. . . . Arctic's plea of guilty to this indictment

It is also to be noted that while the Tax Court referred to "recomputation of taxes and penalties" for 1958 and 1959, no deficiency of tax was assessed for those years; the recomputation was only for the purpose of determining the correct income tax liability to which the penalty would be applicable. The determination here was not whether the taxpayer owed more or less tax for 1958 and 1959 but involved the amount of the penalty for those years.

was therefore a conclusive judicial admission that its return for 1946 was false and fraudulent and that the deficiency in tax which was the necessary result of its being filed was due to fraud with intent to evade tax." 43 T.C. at 75.

*See also* Otsuki v. Commissioner of Internal Revenue, 53 T.C. 96 (1969) (dicta).

In oral argument before this court, Plunkett conceded that perhaps there may be convictions based on pleas of guilty that should operate as estoppels. He stoutly contended, though, that his conviction requires different treatment. He urges us "to look behind [his] conviction" and to conclude that "where the circumstances of the plea, such as coercion induced by his wife's indictment and failure by the trial court to inquire as to whether, in fact, he evaded taxes, indicate that the plea might have been involuntary, the government should not be allowed to use that plea to collaterally estop the appellant in a civil case." *Cf.* Worcester v. Commissioner of Internal Revenue, 370 F.2d 713 (1st Cir. 1966).

The judge presiding at the criminal proceeding informed Plunkett of the offenses charged against him in the indictment and of the consequences of his pleading guilty. Plunkett then acknowledged that he was fully aware of the charges against him and of the consequences of his plea. When the court inquired, "[Have] there been any representations of any kind made to you as to what disposition of your case would be, in view of your plea of guilty here, Mr. Plunkett?," he answered, "No, your Honor." This colloquy does not substantiate the appellant's claim that his guilty plea was coerced as a matter of law.

We concur in the opinion of the court below that

"[t]he stated understanding of counsel, that the government would move to dismiss charges against Mrs. Plunkett if petitioner would plead guilty to the charges against him, does not vitiate petitioner's otherwise voluntary plea of guilty where the agreement was fully performed in conformity with the petitioner's expectations. Petitioner did not misunderstand the terms or the immediate consequences of the agreement and his plea of guilty. Hence, the existence of the agreement does not affect the voluntariness of his plea." 29 CCH Tax Ct.Mem. at 1247.

We find ample support for this holding in United States ex rel. Cunningham v. Follette, 397 F.2d 143 (2d Cir. 1968), cert. denied, 393 U.S. 1058, 89 S.Ct. 699, 21 L.Ed.2d 699 (1969); Cortez v. United States, 337 F.2d 699 (9th Cir. 1964), cert. denied, 381 U.S. 953, 85 S.Ct. 1811, 14 L.Ed.2d 726 (1965); and Kent v. United States, 272 F.2d 795 (1st Cir. 1959). *See also* United States v. Carlino, 400 F.2d 56 (2d Cir. 1968), cert. denied, 394 U.S. 1013, 89 S.Ct. 1630, 23 L.Ed.2d 39 (1969).

■ Plunkett also complains that the judge who accepted his guilty plea was not informed of any evidentiary foundation to support the criminal charge. Consequently, the provision of Rule 11 of the Federal Rules of Criminal Procedure that "[t]he court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea" was allegedly violated.

Plunkett relies heavily on McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), where the Supreme Court admonished federal district courts to adhere rigorously to Rule 11. It held that if a district court does not comply fully with the rule, the defendant's guilty plea must be set aside and his case remanded for another hearing at which he may plead anew. The Court carefully noted that its holding was not based upon constitutional grounds. In Halliday v. United States, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969), the Court decided that *McCarthy* should be applied only to guilty pleas accepted after the date of that decision, April 2, 1969.

The alleged defect in the proceedings against Plunkett was not of constitution-

al dimensions. The petitioner took no appeal directly attacking his conviction or sentence, and he has paid the fine imposed upon him. In light of these circumstances and the restrictions placed on *McCarthy* by *Halliday*, we can see no justification for sustaining Plunkett's collateral attack on the conviction and for voiding the consequences of that conviction in the present case.

In sum, we agree with the Tax Court below that "petitioner's conviction for tax evasion in the years 1960, 1961, 1962 and 1963, pursuant to a plea of guilty, collaterally estops the petitioner from denying fraud for those years." 29 CCH Tax Ct.Mem. at 1247.

We conclude that the decision of the Tax Court (as supplemented herein as to the point not reached by that court) should be and is

Affirmed.