JOHN A. FARRER, Petitioner, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Farrer v. Commissioner
Docket No. 26258-83.
United States Tax Court
T.C. Memo 1987-406; 1987 Tax Ct. Memo LEXIS 403; 54 T.C.M. (CCH) 149; T.C.M. (RIA) 87406; August 19, 1987. Daniel Davis, for the petitioner. T. Keith Fogg, for the respondent. *405 WILBUR
MEMORANDUM FINDINGS OF FACT AND OPINION WILBUR, Judge:
Respondent determined deficiencies in and additions to petitioner's Federal income taxes as follows: Additions to Tax
Year
Deficiency
Sec. 6651(a)(1) [1]
Sec. 6651(a)(2)
Sec. 6653(b)
1977
$ 4,256.26
[2] $ 1,503.50
$ 721.68
$ 5,135.13
1978
7,887.97
2,397.50
1,150.80
9,738.99
1979
5,040.24
1,213.75
291.30
5,447.62
1980
1,741.00
--
4.72
870.50
The issues for decision are: (1) Whether petitioner may deduct certain business and entertainment expenses, (2) Whether petitioner is liable for the additions to tax for fraud, and (3) Whether the statute of limitations bars the assessment of deficiencies for 1977 and 1978. FINDINGS *406 OF FACT Some of the facts have been deemed admitted pursuant to Rule 90(c) [3] due to petitioner's failure to respond to respondent's request for admissions. The request for admissions and attached exhibits are incorporated by this reference. Petitioner John A. Farrer resided in Virginia Beach, Virginia at the time the petition was filed in this case. Petitioner filed U.S. Individual Income Tax Returns, Forms 1040, for the years in issue with the Internal Revenue Service Center in Memphis, Tennessee. The returns for the years in issue were filed on the following dates: Taxable Year
Return Filed
1977
May 10, 1979
1978
June 15, 1980
1979
March 16, 1981
1980
April 15, 1981
Petitioner made the following payments towards his tax liabilities for the years in issue: Taxable Years
Payment Date
Amount
1977
September 3, 1980
$ 9,751.87
1978
April 17, 1979
2,000.00
1978
August 18, 1981
16,211.54
1979
April 15, 1980
1,000.00
1979
August 18, 1981
7,463.47
1980
August 18, 1981
44.60
1980
September 28, 1981
144.38
*407 During the years in issue, petitioner was a general agent for American National Insurance Company, an insurance agency in Norfolk, Virginia. Petitioner operated as an independent contractor and received compensation in the form of commissions rather than salary. Most of petitioner's work was done outside the office and petitioner often conducted business over lunch or dinner. On his returns for the years in issue, petitioner claimed the following amounts as business expenses for lunches and dinners: Taxable Years
Amount
1977
$ 10,276
1978
16,631
1979
12,028
1980
9,161
Petitioner recorded his expenditures for business meals in daily log books. For each entry, petitioner generally recorded the name of the restaurant, the business nature of the meal, the names of any persons entertained, the type of meal (i.e., breakfast, lunch, or dinner) and the cost of the meal. Petitioner also generally attached to each entry in the log books the bottom ticket of the restaurant check (the "stub"). During the years in issue, petitioner made in excess of 1,100 such entries, totalling more than $ 40,000 in amount. Petitioner was audited by one of respondent's agents *408 with respect to his 1977 through 1980 taxable years. Petitioner provided the examining agent with his log books as substantiation of his claimed meal expenses. The examining agent identified certain entries in the log books which he considered unusual or suspicious. Ten of the stubs attached to the log book entries were duplicates of stubs used on other dates. The total amount represented by these stubs was approximately $ 600. The duplicate stubs were obtained from restaurant checks which had copies attached. The examining agent also considered certain sequences of stubs to be suspicious because of inconsistencies between their chronological and numerical order. The following sequences of stubs were noted by the examining agent: Restaurant
Date
Receipt No.
Amount
Jolly Ox
11-13-79
060494
$ 32.40
11-27-79
060496
54.20
12-06-79
0159913
63.80
03-01-79
0159998
27.45
04-20-79
0512724
41.75
07-23-79
0512728
71.50
05-09-79
0549189
31.75
04-24-79
0549201
93.38
01-23-80
0909595
35.93
03-27-80
0909611
28.11
05-22-80
0692691
52.97
02-06-80
0692700
56.49
Ramada Inn
03-13-78
78718
42.40
06-13-78
78719
43.20
08-08-77
122678
47.35
08-29-77
122679
82.74
Victoria Station
02-16-78
422604
149.20
02-20-78
422606
78.20
02-07-78
422611
64.20
02-06-78
422612
37.80
01-26-78
0031359
34.40
01-03-78
0031364
63.41
09-26-78
1180791
89.00
08-17-78
1180793
54.60
08-31-78
1180798
43.20
11-07-78
1180801
114.30
08-16-78
1278997
44.00
08-01-78
1278999
116.40
09-27-78
1279001
140.00
04-11-78
1279004
74.00
09-28-78
1279007
87.60
08-30-78
1279010
74.60
08-10-78
1279011
63.80
09-08-78
1279015
96.20
08-22-78
1279021
38.20
Mr. London's
01-09-80
002139
45.79
08-07-80
002138
32.50
*409 Respondent's examining agent also found what he considered irregularities in the types of stubs used for certain restaurants. Some of these involved different types of stubs used for the same restaurant within a short span of time, while others involved sets of identical types of stubs with close receipt numbers used for different restaurants. The following sets of stubs were identified by the examining agent as being sets of different types of stubs used for the same restaurant within a short time span: Name of Restaurant
Date
Restaurant
Printed on Stub
12-28-77
Victoria Station
No
01-05-78
Yes
04-21-77
Froggy's
No
06-07-77
Yes
09-15-78
Jolly Ox
No
10-20-78
Yes
11-30-79
Kim Ting
No
10-30-79
No
01-24-78
Jolly Ox
No
01-18-78
Yes
08-25-78
Black Orchid
No
10-18-78
Yes
04-22-77
Crow's Nest
No
08-10-77
No
02-15-79
Lloyd's
No
04-21-79
No
The following sets of stubs were identical types of stubs with relatively close receipt numbers but which were used for different restaurants: Date
Receipt No.
Restaurant
06-20-79
182600
Kim Ting
02-06-79
182602
Rusty Nail
01-20-77
C598431
Lone Pine
02-18-77
C599080
Henry's
02-25-77
11603
Rusty Nail
03-18-77
11651
Side Door
02-15-79
51275
Lloyd's
11-28-79
52836
VA. Reel
*410 On some of the receipt stubs, the dates had either been altered or did not match the date upon which the stub had been entered into the log book. This occurred with respect to the following receipts: Entry Date
Restaurant
Original Date
Altered Date
05-17-78
Ramada Inn
05-17-76
--
05-19-78
Embers
05-18-76
05-19-77
08-08-78
Kanki
08-08-76
08-08-78
08-10-78
Victoria Station
10-10   --
08-11-78
Great Gatsby
10-11   --
08-17-78
Victoria Station
10-17   --
08-18-78
Black Orchid
10-18   --
08-16-79
VA. Reel
09-07-80
--
As an independent contractor, petitioner did not have taxes withheld from the compensation he received as an insurance agent. Petitioner also, however, did not make payments of estimated taxes during the years in issue. A statutory notice of deficiency, dated June 13, 1983, was mailed to petitioner with respect to the 1977 through 1980 taxable years. In the statutory notice, respondent disallowed all of petitioner's claimed meal expenses, as well as determining additions to tax. OPINION The first issue for decision is whether respondent properly disallowed the deduction of petitioner's *411 claimed meal expenditures. Section 162(a) generally provides a deduction for expenses incurred in the carrying on of a trade or business, including expenses incurred for business travel and entertainment. Section 274(d), however, disallows the deduction of such travel and entertainment expenses unless the taxpayer claiming the expenses "substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expenses * * *, (B) the time and place of the travel [or] entertainment * * *, (C) the business purpose of the expense * * *, and (D) the business relationship to the taxpayer of the persons entertained." Pursuant to the regulations under section 274, there are two ways in which petitioner can satisfy the requirements of section 274(d). First, petitioner will have satisfied the requirements of section 274(d) if he has maintained an account book, diary, statement of expense, or similar record, and documentary evidence which, in combination, are sufficient to establish the elements specified in section 274(d). Sec. 1.274-5(c)(2), Income Tax Regs. Second, if petitioner has failed to maintain adequate records, the petitioner must establish *412 such elements by his own statement, whether written or oral, containing specific information in detail, and by other corroborative evidence. Sec. 1.274-5(c)(3), Income Tax Regs.
Respondent asserts, and we agree, that petitioner has failed to offer any substantial evidence other than his log books and that, therefore, petitioner's right to deduct his losses turns on whether the log books and information contained therein constitute adequate records for purposes of section 1.274-5(c)(2), Income Tax Regs. Respondent has conceded, however, that absent the weight of evidence showing that petitioner's log books are unreliable, the books are sufficient to satisfy the adequate records requirement of the regulations. Respondent asserts that the combination of inaccuracies in the log books and other implausible aspects of the books make them wholly unreliable. Respondent enumerates the points he believes demonstrate the unreliability of the log books as follows: (1) the inaccuracies in the log books show that they could not have been maintained contemporaneously; (2) the receipt stubs entered in the log books included 10 duplicates; (3) the style of restaurant receipt stubs entered in the *413 log books change in a fashion which is not possible; and (4) the sequence of the numbers on the receipt stubs cannot be reconciled with the chronology in which those stubs appear in the diaries. Respondent's claim that the diaries could not have been maintained contemporaneously is based on the existence of 8 receipt stubs which were entered into the log books on dates other than the dates which were originally marked on the stubs. On 2 of these stubs, the original dates had been marked over with a later date. The other 6 stubs were unaltered but the dates on the stubs did not match the dates upon which they were entered into the log books. Petitioner has failed to explain the alteration and mismatching of these receipt stubs. While we do not find that this establishes that the log books were not maintained contemporaneously, the mismatching and alteration does raise some degree of suspicion. Respondent also points to the use by petitioner of 10 duplicate receipt stubs to support his allegation that the log books are unreliable. Petitioner admits that the 10 duplicate stubs were used, but he testified at trial that he used the duplicate receipts only on the rare occasions when *414 he had a business meal at a restaurant and had forgotten to obtain a receipt stub. Respondent argues that changes in the styles of receipt stubs used for particular restaurants and discrepancies between the numerical and chronological sequences of receipt stubs demonstrate the lack of reliability of the log books. The receipt stubs which appear to have possible inconsistencies between their chronological and numerical order were generally stubs with close receipt numbers which were either not dated closely or which had dates in a reverse order from the order of the receipt numbers. Some of these receipt stubs had consecutive receipt numbers but nonetheless either had reversed dates or dates which were up to several months apart. The possibly inconsistent match up of styles of receipt stubs consist of two categories of apparent inconsistencies. The first category consists of different types of receipt stubs used for the same restaurant within a short period of time. These sets of stubs, as identified by respondent, fell within periods ranging from six days to 3 1/2 months. The second category consisted of receipt stubs with identical styles and relatively close receipt numbers *415 which were used for different restaurants. Petitioner bears the burden of substantiating his claimed deductions. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a). Respondent has raised numerous points which cast suspicion upon the reliability of petitioner's log books. Petitioner on the other hand has offered no meaningful evidence to corroborate the reliability of the log books. Nor has petitioner offered adequate explanations for the inaccuracies and inconsistencies which respondent has identified with respect to the log book entries. We find that petitioner has failed to establish the reliability of the information contained in his log books and that such log books are, therefore, not adequate records for purposes of section 1.274-5(c)(2), Income Tax Regs. Accordingly, petitioner has not sustained his burden of proof and is not entitled to deduct the claimed meal expenditures disallowed by respondent. The next issue for consideration is whether petitioner is liable for the additions to tax for fraud. Section 6653(b) imposes an addition to tax if any part of an underpayment of tax is due to fraud. Fraud may be proved by circumstantial evidence *416 because direct proof of the taxpayer's intent is rarely available. The taxpayer's entire course of conduct may establish the requisite fraudulent intent. Stone v. Commissioner,56 T.C. 213, 223-224 (1971); Otsuki v. Commissioner,53 T.C. 96, 105-106 (1969). Respondent bears the burden of proof and must show clear and convincing evidence of each element of fraud. Section 7454(a); Rule 142(b); Stratton v. Commissioner,54 T.C. 255, 284 (1970) modified as to another issue 54 T.C. 1351 (1970). Fraud has been described as an "intentional wrongdoing * * * motivated by a specific purpose to evade a tax known or believed to be owing." Stoltzfus v. United States,398 F.2d 1002, 1004 (3d Cir. 1968); Webb v. Commissioner,394 F.2d 366 (5th Cir. 1968), affg. a Memorandum Opinion of this Court. The elements to be shown are (1) an underpayment of tax, [4] and (2) that some part of this underpayment was due to fraud. Plunkett v. Commissioner,465 F.2d 299, 303 (7th Cir. 1972), affg. a Memorandum Opinion of the Court. In this case, respondent has clearly failed to satisfy his burden *417 of proof. Respondent argues that petitioner's late filing of his returns for 1977, 1978, and 1979, his failure to pay estimated tax during any of the years in issue, and his manipulation of the log books constitute a sufficient basis for a finding of fraud. Respondent concedes that petitioner's late filing and failure to pay estimated tax do not alone establish fraud and that "the guts of this fraud case is [sic], of course, petitioner's course of conduct concerning his diaries." The only log book entries which respondent has clearly shown to be inaccurate are the 10 duplicate receipt stubs and the eight stubs with either altered or mismatched dates. While the apparent inconsistencies in receipt styles, numbering, and chronology are very suspicious, respondent has failed to demonstrate that these apparent inconsistencies are in fact the result of petitioner's fabricating log book entries for the purpose of evading taxes. The *418 record contains no evidence of the standard practices of restaurants or of the practices of any particular restaurant with respect to the use of consistent styles of receipts. Similarly, the record is devoid of any evidence relating to the existence of a relationship between the numerical and chronological sequencing of restaurant receipts. Finally, we must keep in mind that while there were numerous highly suspicious receipts used by petitioner, they represent only a small percent of the approximately 1100 receipts stubs entered in the log books by petitioner. On this record we cannot find that respondent had demonstrated by clear and convincing evidence that petitioner was attempting to fraudulently evade his Federal income taxes. [5]
Accordingly, we hold that petitioner is *419 not subject to additions to tax for fraud with respect to any of the years in issue. The final issue for our decision is whether the statute of limitations bars the assessment of deficiencies for 1977 and 1978. Petitioner filed his Federal income tax returns for the years 1977 and 1978 on May 10, 1979 and June 15, 1980, respectively. Respondent issued the notice of deficiencies for all the years in issue on June 13, 1983. The notice of deficiency was therefore timely with respect to petitioner's 1978 taxable year. Sec. 6501(a). Respondent, however, relies on the provisions of section 6501(c)(1) to extend the standard 3-year statute of limitations with respect to 1977. As we have not found petitioner to have committed fraud, section 6501(c)(1) is inapplicable. Accordingly, we hold that the assessment of deficiency for the year 1977 is barred by the statute of limitations. Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue. ↩
2. Previous assessments under section 6651(a)(1) and 6651(a)(2) were abated in accordance with section 6653(d). Respondent has not asserted these additions in the alternative either in the notice of deficiency or on brief. We, therefore, will not consider them.↩
3. Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
4. Sec. 6653(c)(1) defines "underpayment" for purposes of sec. 6653 as a "deficiency" as defined in sec. 6211, except that the tax shown on a return referred to in sec. 6211(a)(1)(A) shall be taken into account only if the return was timely filed. ↩
5. The only evidence of any type which respondent introduced on these subjects was the testimony of his examining agent. The agent testified that he visited local restaurants and learned nothing which changed his conclusions that the changes in receipt styles and the sequencing of the receipt tickets was suspicious. The agent's opinion of evidence not offered at trial is not relevant to this decision. ↩