JOSEPH E. LEICH and JEANNE M. LEICH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Leich v. Commissioner
Docket No. 25480-87
United States Tax Court
T.C. Memo 1989-632; 1989 Tax Ct. Memo LEXIS 632; 58 T.C.M. (CCH) 770; T.C.M. (RIA) 89632; November 27, 1989
Robert W. Siegel, for the petitioners. Jacqueline M. Hotz, for the respondent. SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge: In a notice of deficiency mailed to petitioners on May 22, 1987, respondent determined the following deficiencies in and additions to petitioners' Federal income taxes: Addition to Tax [1]
Year
Deficiency
Section 6653(b)
1977
$ 11,243.04
$ 5,621.52
1978
$ 18,930.22
$ 9,465.11
*633 The principal issue in this case is whether any part of the underpayment of income tax for each of the years 1977 and 1978 is due to fraud with intent to evade tax. If fraud within the meaning of section 6653(b) has been proved by respondent with respect to either year, we must decide what additional taxable income petitioners received in that year. If fraud has not been proved by respondent with respect to either year, the assessment of additional income tax for such year is barred by the statute of limitations. FINDINGS OF FACT Some of the facts are stipulated. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference. Petitioners, Joseph E. Leich and Jeanne M. Leich, were husband and wife and resided in Troy, Michigan, during the years 1977 and 1978 and when they filed their petition in this case. They were subsequently divorced. They timely filed joint Federal income tax returns for the years 1977 and 1978 with the Internal Revenue Service Center at Cincinnati, Ohio. *634 During all of 1977 and 1978 Joseph E. Leich (hereinafter petitioner) was a shareholder and director of Industrocraft, Inc., a Michigan corporation. After his father's death in 1977, petitioner was also the corporation's president and chief executive officer. The other shareholders of the corporation were his brother and his uncles. Industrocraft was incorporated in April of 1966 to carry on the business of stamping, assembling, and manufacturing parts for other manufacturers including the principle manufacturers of automobiles. Petitioner was one of its incorporators and an original shareholder. Industrocraft had about 22 employees during 1977 and 1978. For accounting and tax purposes, the corporation used a fiscal year ending on March 31. From its organization in 1966 through its fiscal year 1979, its accounting records were maintained by Gullett, Fox & Boyer, Certified Public Accountants. The firm also prepared Industrocraft's corporate income tax returns, including its returns for fiscal years 1978 and 1979. Robert H. Gullett, the senior member of the firm, prepared petitioners' individual income tax returns for the calendar years 1977 and 1978. On or about July 1, 1977, petitioner, *635 as the chief executive officer of Industrocraft, asked Mr. Gullett if there was some way the corporation could generate cash for use in obtaining bids from some of its customers. In response, Mr. Gullett suggested an arrangement whereby Industrocraft would make out checks to Gullett, Fox & Boyer and deduct the amount of the checks as being for accounting services. The accounting firm would include the checks in its income but would return to Industrocraft 50 percent of each check's face amount in cash. Petitioner agreed to the arrangement, and on or about September 13, 1977, caused an Industrocraft check to be made payable to Gullett, Fox & Boyer for $ 8,578.86 and caused the amount of the check to be falsely entered on Industrocraft's books as an accounting expense. Mr. Gullett or some other member of his firm made arrangements to have the check cashed in Windsor, Ontario, and delivered cash to Industrocraft, by way of petitioner, equal to 50 percent of the check. Later petitioner was informed by Mr. Gullett that in the future Industrocraft's checks were not to be made payable to the firm but instead were to be made payable as directed by Mr. Boyer, another member of the firm. *636 Pursuant to Mr. Boyer's direction petitioner thereafter caused six of Industrocraft's checks to be made out to fictitious payees as follows: Fictitious
Date of Check
Amount
Payee
December 20, 1977
$ 12,200.00 R. G. Davis
March 10, 1978
9,822.00 R. G. Davis
June 15, 1978
15,000.00 R. G. Davis
August 2, 1978
8,976.00 T. A. Gillen
August 2, 1978
9,758.00 B. J. Cooper
November 22, 1978
11,726.00 R. G. Davis
Pursuant to Mr. Boyer's directions, petitioner also had each of the above checks falsely entered as a business expense on Industrocraft's records and delivered to the accounting firm on or about the date of the checks. The checks were delivered by a trusted employee of Industrocraft. After each check had been cashed in Canada by or for the accounting firm, petitioner would receive a telephone call and would then have the same trusted employee pick up from the accounting firm a sealed envelope containing cash equal to 50 percent of the check. With one exception the envelopes were delivered unopened to petitioner. On one occasion, however, at petitioner's request the employee opened the envelope shortly after leaving the accounting *637 firm and advised petitioner by telephone of the amount of cash it contained. All of the envelopes containing cash were delivered directly to petitioner by the employee. Each envelope was opened and its contents counted and placed in a safe at Industrocraft by petitioner in private because no other officer, director, shareholder, or employee, except as noted above, of Industrocraft knew about the check cashing arrangement. About the end of 1979 or early in 1980 agents of the Federal Bureau of Investigation, the Customs Service, and the Internal Revenue Service began an investigation of Gullett, Fox & Boyer. When the investigation was subsequently extended to petitioner, he agreed to cooperate with and assist the agents in their investigation. On at least one occasion he met with Mr. Gullett while wearing a recording device and taped their conversation for the agents. On or about December 9, 1980, all of those involved in the check cashing scheme were indicted on one or more felony counts in the United States District Court for the Eastern District of Michigan. Petitioner was charged with two counts of conspiring to defraud the United States; six counts of transporting stolen *638 securities; two counts of attempting to evade income taxes due from Industrocraft for fiscal years 1978 and 1979; two counts of attempting to evade personal income taxes for the calendar years 1977 and 1978; and one count of interstate travel in aid of racketeering. Robert Gullett, Marvin Fox, and Wayne Boyer, of Gullett, Fox & Boyer, were indicted on multiple counts of interstate transportation of stolen securities; travel act offenses; conspiring to violate the R.I.C.O. Act of 1970; conspiring to defraud the United States; obstructing justice; and attempted income tax evasion. Petitioner pleaded guilty to one count of conspiring to defraud the United States and the two counts of attempting to evade the income taxes of Industrocraft. On these counts he was fined $ 7,500, received a three year suspended sentence and was placed on probation. The remaining counts against him were dismissed. Throughout the criminal investigation petitioner consistently maintained that he did not keep any of the cash received from the accounting firm, but that it was passed on to others in order to obtain business for Industrocraft. However, he refused to identify the person or persons who received *639 the cash even during the criminal trial of Robert Gullett and Marvin Fox, where petitioner was a key witness. Robert Gullett and Marvin Fox were convicted on all counts of the indictments against them. United States v. Gullett, 713 F.2d 1203 (6th Cir. 1983). In April of 1985, an agent for respondent began a civil audit of Industrocraft for fiscal years ended March 31, 1978, and March 31, 1979. When the audit of Industrocraft began, respondent's agent was told that the corporate records were still in the possession of the grand jury. At the agent's request petitioner signed a letter authorizing the United States Attorney to obtain and release the records to the agent. In September of 1985, the same agent began an audit of petitioners' Federal income tax returns for 1977 and 1978. During this audit, petitioners were represented by Lloyd Adelson, an accountant. Respondent's agent admitted that during the civil audit he did not review petitioner's testimony at the criminal trial of Robert Gullett and Marvin Fox. He also did not attempt to interview any of the Federal agents that were involved in the criminal investigation of petitioner or the accounting firm *640 of Gullett, Fox & Boyer. Furthermore, even though he was aware that petitioner maintained that he did not keep any of the funds received from the accounting firm, the agent made no attempt to refute petitioner's claim with a net worth computation or an analysis of petitioner's personal bank accounts or his investments in stocks, bonds, and real estate during 1977 and 1978. In the notice of deficiency, respondent determined that petitioner received taxable income of $ 10,389.43 in 1977 and $ 27,641 in 1978 as a result of the check cashing arrangement. In addition, respondent determined that petitioner received constructive dividends from Industrocraft of $ 11,837.52 in 1977 and $ 8,484.47 in 1978 in the form of the personal use of corporate automobiles, corporate payment of personal expenses, and corporate checks drawn to cash and endorsed by petitioner. Respondent also disallowed a medical expense deduction of $ 150 claimed by petitioners for each of the years 1977 and 1978. With respect to petitioner Jeanne Leich, respondent determined that she received a salary or wages from Industrocraft of $ 4,089.14 in 1977 and $ 3,385.40 in 1978. From the only evidence in the record on *641 this point it is apparent, however, that Jeanne Leich was not an employee of Industrocraft in 1977 or 1978 and that the amounts she received from Industrocraft were to reimburse her for expenditures made on behalf of the corporation. During a conference in 1986 with the Appeals Division of respondent, petitioner revealed for the first time the name of a former employee of Ford Motor Company who allegedly received all of the amounts paid to petitioner by the accounting firm in the fraudulent check cashing arrangement. OPINION Since respondent's notice of deficiency was mailed to petitioners more than three years after their returns for 1977 and 1978 were filed, and since there is no claim by respondent that the six year statute is applicable, it is apparent, as previously stated, that the crucial issue in this case is whether or not petitioners' returns were fraudulent because, in the absence of fraud within the meaning of section 6653(b), respondent's reliance upon the indefinite statute of limitations provided by section 6501(c)(1) is inappropriate and no assessment can be made for either year. Section 6501(a); Estate of Temple v. Commission, 67 T.C. 143, 159-160 (1976). *642 Respondent has the burden of proving by clear and convincing evidence that some part of an underpayment of tax for each of the years under consideration is due to the fraudulent acts of petitioners. Section 7454(a); Rule 142(b), Tax Court Rules of Practice and Procedure; Plunkett v. Commissioner, 465 F.2d 299, 303 (7th Cir. 1972), affg. a Memorandum Opinion of this Court. Fraud is a question of fact. Grosshandler v. Commissioner, 75 T.C. 1, 19 (1980). It is never imputed or presumed; and a suspicion, however strong, is insufficient to sustain a finding of fraud. Beaver v. Commissioner, 55 T.C. 85, 92 (1970). Fraud means actual, intentional wrongdoing, and the intent required is the specific purpose to evade a tax known to be due. Therefore, to establish fraud in this case respondent must show with clear and convincing evidence that petitioners intended to evade taxes, which they knew were owed, by conduct intended to conceal, mislead, or otherwise prevent their collection. Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968); Webb v. Commissioner, 394 F.2d 366, 377-378 (5th Cir. 1968), *643 affg. a Memorandum Opinion of this Court. Fraud must be affirmatively established. Drieborg v. Commissioner, 225 F.2d 216, 218 (6th Cir. 1955), affg. in part a Memorandum Opinion of this Court. Consequently, respondent cannot simply rely on petitioners' failure to satisfy their burden of proof as to the underlying deficiencies. Otsuki v. Commissioner, 53 T.C. 96, 106 (1969). In this case respondent relies upon the four adjustments made to petitioners' income as proof of fraud. In the first adjustment, respondent determined that certain expenditures made by Industrocraft which the corporation failed to substantiate were for the personal use of petitioner and treated them as being taxable to him as constructive dividends. At trial petitioners stipulated that they were unable to contest this adjustment because of the lapse of time between the preparation and filing of the 1977 and 1978 corporate and personal income tax returns and the date the audit began in September of 1985, and because the books and records of the corporation were not available to them. However, their failure to present evidence substantiating the business purpose for the *644 payments made by the corporation cannot serve as the basis for inferring a fraudulent intent to petitioners. Respondent, who has the burden of proof with respect to fraud, offered no evidence with respect to the constructive dividends. Consequently, no fraudulent intent can be imputed to petitioners from the adjustment. In the second adjustment, respondent determined that certain checks received by petitioner Jeanne Leich from Industrocraft during 1977 and 1978 constituted taxable wages. The examining agent admitted, however, that he never discussed this adjustment with petitioners and did not examine the corporation's check stubs. Since it was the practice of Industrocraft to record the purpose for each check on the check stub, and since both petitioners testified in a forthright manner that the checks represented reimbursement to Jeanne Leich for expenditures made by her on behalf of the corporation, we conclude, and have so found, that the checks did not constitute taxable income to petitioners. In the third adjustment, respondent disallowed a medical deduction of $ 150 claimed by petitioners in each year for health insurance premiums which were actually paid by Industrocraft. *645 We have found that the relevant corporate returns were prepared by the accounting firm of Gullett, Fox & Boyer and that the individual returns were prepared by Mr. Gullett. Both petitioners testified that they relied upon the accountant in the preparation of their tax returns and that if they were aware of this item at all they were unaware that they were not entitled to claim the deductions. Furthermore, respondent offered no evidence which tends to support a finding that any underpayment attributable to this item is fraudulent. Finally, turning to the heart of the fraud issue, respondent determined that petitioner received income from Industrocraft in the amounts of $ 10,389.43 in 1977 and $ 27,641 in 1978 as a result of the check cashing scheme developed by the accounting firm of Gullett, Fox & Boyer. Petitioner testified that most of the time after he received an envelope containing cash from the accounting firm, he placed the cash in a different sealed envelope with other materials such as blueprints, and had a particular employee of Industrocraft deliver the envelope to an employee of Ford Motor Company who was then arranging to have Industrocraft's bids on subcontracts *646 on certain Ford work accepted. Petitioner also testified that, on certain occasions, if the Ford employee was going to be in or near the Detroit area, he would deliver the cash to the Ford employee himself. While admitting that he knew petitioner and sometimes met with him and with an Industrocraft employee who made deliveries to Ford during 1977 and 1978, the Ford employee, who is now retired, emphatically testified that he never received any cash payments from petitioner or any other Industrocraft employee. From the record before us we are unable to determine whether petitioner kept the corporate funds at issue or passed the funds on to the Ford employee. Suffice it to say, however, that the record contains insufficient evidence to support a conclusion that respondent has carried his burden of proving fraud by petitioner with clear and convincing evidence. There are significant gaps in respondent's evidence. First, the belated audit was seriously flawed. As reflected in our findings, the examining agent did not interview or examine the reports of any of the agents involved in the earlier criminal investigation of petitioner and the accounting firm. He also failed to make even *647 a perfunctory examination of petitioner's net worth or an analysis of his personal bank accounts and investments during 1977 and 1978 to see if there was any evidence that petitioner retained the corporate funds received from Gullett, Fox & Boyer. In other words, the agent's testimony was not convincing and the record contains no explanation for the absence of certain important witnesses, such as the criminal investigators, or the failure by respondent to investigate the former Ford employee after learning his identity. The gaps in respondent's evidence in this case are even more noticeable in view of the statement by the Court of Appeals in United States v. Gullett, 713 F.2d 1203, 1211 (6th Cir. 1983), that the proceeds of the Industrocraft checks were used to pay commercial bribes. Accordingly, from the record as a whole, we are satisfied that respondent has failed to prove fraud by clear and convincing evidence; and in the absence of fraud, the assessment of additional taxes for 1977 and 1978 is barred. Section 6501(a). Decision will be entered for the petitioners. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue, unless otherwise indicated.↩