JOSEPH F. MERLO, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Merlo v. Commissioner
Docket No. 22942-81.
United States Tax Court
T.C. Memo 1987-570; 1987 Tax Ct. Memo LEXIS 570; 54 T.C.M. (CCH) 1086; T.C.M. (RIA) 87570; November 16, 1987. *570 Petitioner reported substantial amounts of income from estimated wagering winnings for 1973 through 1977. For 1973 and 1974, he omitted W-2 wage income. For 1977, he omitted substantial wagering winnings, income from an illegal bingo game operation, and long-term capital gain from a sale of property held in the names of nominees. He was convicted of having committed various crimes relating to gambling in the period between September 1977 and June 1978. He was convicted of excise tax evasion for portions or all of 1977. Held: (1) Respondent has failed to show by clear and convincing evidence that petitioner has an underpayment due to fraud for either 1973 or 1974. (2) Respondent has shown by clear and convincing evidence that petitioner has an underpayment due to fraud for 1977. Sec. 6653(b), I.R.C. 1954. William P. Holder, Jr., for the petitioner. Frank R. DeSantis, for the respondent. CHABOT
MEMORANDUM FINDINGS OF FACT AND OPINION CHABOT, Judge: Respondent determined deficiencies in Federal individual income taxes and additions to tax under sections 6651(a)(1) [1] (failure to file timely tax return), 6653(a) (negligence, etc.), and 6653(b) (fraud) against petitioner as follows: *571 Additions to Tax
Year
Deficiency [2]
Sec. 6651(a)(1)
Sec. 6653(a)
Sec. 6653(b) [3] *572 1973
$  9,898.00
-0-
-0-
$ 10,185.00
1974
5,522.40
-0-
-0-
8,071.20
1975
1,113.90
$ 278.48
$ 55.70
-0-
1976
978.70
244.68
48.94
-0-
1977
60,677.60
-0-
-0-
30,333.80 After concessions by petitioner, the issue for decision is whether petitioner is liable for additions to tax under section 6653(b) for 1973, 1974, and 1977. (See n. 16, infra.) FINDINGS OF FACT [4] *573 Some of the facts have been stipulated; [5] the stipulations and the stipulated exhibits are incorporated herein by this reference. When the petition was filed in the instant case, petitioner resided in Akron, Ohio. During 1973 and 1974, petitioner was employed by Williams & Majdanik Construction Company, Inc. *574 (hereinafter sometimes referred to as "Construction Company") in the Akron-Canton, Ohio, area. In 1973, Construction Company paid to petitioner $ 12,300 in wages, from which $ 1,535.86 was withheld as Federal income tax. In 1974, Construction Company paid to petitioner $ 9,600 in wages, from which $ 1,214.84 was withheld as Federal income tax. Petitioner did not report these wages on his 1973 and 1974 tax returns, and did not claim credit for the withheld amounts. During 1977, petitioner was engaged in wagering activities in the Akron-Canton area. Petitioner earned $ 94,411 from his wagering activities in 1977; of this amount, he reported $ 55,000 on his 1977 tax return and he did not report $39,411. Also, during 1977, petitioner was engaged in the operation of illegal bingo games in the Akron-Canton area. Petitioner owned and operated a business known as City Supply Company (hereinafter sometimes referred to as "City Supply") which had income and expenses with regard to bingo operations. In 1977, City Supply had a net profit of $ 47,514.65 which was income to petitioner. Petitioner did not report the $ 47,514.65 net profit of City Supply on his 1977 tax return. In 1977, petitioner *575 sold property which he had bought in 1968, and which was held in the names of Joseph and Carmella Mollica. The property was sold for $ 37,000, producing a long-term capital gain of $ 14,237.15 for petitioner. Petitioner did not report the capital gain on his 1977 tax return. As a result of the foregoing (wagering income omission, omission of City Supply income, and omission of capital gain income) and the claim of a dependency deduction to which he was not entitled, petitioner understated his taxable income on his 1977 tax return inthe amount of $ 94,794.22. Petitioner's 1973 through 1977 tax returns were prepared by Rolland Nisterchuk (hereinafter sometimes referred to as "Nisterchuk"), a certified public accountant. Petitioner met once with Nisterchuck about April 14, 1978. At this meeting, petitioner did not give Nisterchuk any records. Rather, petitioner read numbers from a little black book to Nisterchuk and instructed Nisterchuk to write these numbers down on his tax returns. Petitioner told Nisterchuk that the only source of income he received during 1973 through 1977 was from gambling winnings. Petitioner accurately reported his gambling income for 1973 through 1976. *576 Nisterchuk asked petitioner whether he had income from W-2 wages, to which petitioner responded that he did not. On June 9, 1978, an affidavit for a search warrant was filed with the Common Pleas Court of Summit County, Ohio. The affidavit requested a warrant be issued to search several residences, including an apartment known to be petitioner's residence, for gambling paraphernalia. The Common Pleas Court issued search warrants for two of the properties listed in the affidavit, not including petitioner's apartment. These two search warrants were executed on June 11, 1978, and gambling paraphernalia were seized from the properties described in the search warrants. On June 13, 1978, petitioner filed income tax returns for 1973 through 1977. [6]
On March 14, 1979, petitioner was convicted of the following crimes committed between September 1977 and June 1978: engaging in organized crime, illegally conducting a bingo game, grand theft of $ 150 or more, and gambling. On June 19, 1981, petitioner was convicted under section 7201 on three counts of evading Federal excise taxes as follows: *577 wagering tax for January 1977 (sec. 4401), wagering tax for October 1977 (sec. 4401), and annual occupational tax for 1977 (sec. 4411). These convictions were affirmed on appeal. United States v. Merlo,704 F.2d 331 (CA6 1983). On his 1973 tax return, petitioner reporrted $ 38,000 of estimated wagering winnings; he did not itemize deductions; he claimed dependency exemptions for three children; and he claimed a credit for $2,000 of estimated tax payments. In the notice of deficiency, respondent's only adjustment to taxable income was to add the $ 12,300 in wages income from Construction Company; respondent gave petitioner credit for the $ 2,000 estimated tax payments and the $ 1,535.86 wages withholding. On his 1974 tax return, petitioner reported $ 33,000 of estimated wagering winnings; he did not itemize deductions; and he claimed dependency deductions for three children. In the notice of deficiency, respondent's only adjustment to taxable income was to add the $ 9,600 in wages income from Construction Company; respondent determined a liability for self-employment taxes on a base of $ 3,600; and respondent gave petitioner credit for the $ 1,214.84 wages withholding. On his 1975 *578 and 1976 tax returns, petitioner reported $ 34,000 and $ 48,000, respectively, of estimated wagering winnings; he did not itemize deductions; and he claimed dependency deductions for three children. In the notice of deficiency, respondent did not make any adjustments to taxable income; and respondent determined liabilities for self-employment taxes. On his 1977 tax return, petitioner reported $ 55,000 of estimated wagering winnings; he did not itemize deductions; and he claimed dependency deductions for three children. In the notice of deficiency, respondent made the following adjustments increasing taxable income: (1) $ 39,411 additional wagering income, (2) $ 47,514.65 income from City Supply, (3) $ 7,118.57 income from a sale of property ($ 14,237.115 gain, minus the 50-percent sec. 1202 deduction), [7] and (4) $ 750 disallowance of a dependency deduction for one of the three children. Respondent determined liabilities for self-employment taxes. * * * For 1977, petitioner had an underpayment of income *579 taxes required to be shown on his tax return; some part of this underpayment was due to petitioner's fraud. OPINION Respondent contends that some part of petitioner's 1973, 1974, and 1977 underpayments are due to fraud. For 1973 and 1974, respondent relies on the circumstances of petitioner's late filing of his tax returns and also on petitioner's omissions of his wages. For 1977, respondent relies on petitioner's omissions of income from a sale of real property and from his activities as a bookmaker and operator of illegal bingo games, as well as petitioner's conviction for evasion of several Federal excise taxes for 1977, and also petitioner's conviction for conducting illegal bingo games, gambling, and grand theft during 1977. Petitioner concedes his convictions, maintains that he has paid his debt to society, and denies any fraud with respect to his income taxes. We agree with petitioner's conclusion as to 1973 and 1974; we agree with respondent as to 1977. When respondent seeks to impose the addition to tax under section 6653(b), [8] he bears the burden of proving by clear and convincing evidence that petitioner has an underpayment, and that some part of this underpayment is due *580 to fraud. Section 7454(a); [9] Rule 142(b); e.g., Stone v. Commissioner,56 T.C. 213, 220 (1971); Otsuki v. Commissioner,53 T.C. 96, 105 (1969). The issue of fraud poses a factual question which is to be decided on an examination of all the evidence in the record. Plunkett v. Commissioner,465 F.2d 299, 303 (CA7 1972), affg. *581 a Memorandum Opinion of this Court; [10]Mensik v. Commissioner,328 F.2d 147 (CA7 1964), affg. 37 T.C. 703 (1962); Stone v. Commissioner,56 T.C. at 224; Stratton v. Commissioner,54 T.C. 255, 284 (1970). Fraud is an actual intentional wrongdoing, and the intent required is the specific purpose to evade a tax believed to be owing. E.g., Webb v. Commissioner,394 F.2d 366, 377 (CA5 1968), affg. a Memorandum Opinion of this Court; [11]Powell v. Granquist,252 F.2d 56, 60 (CA9 1958); Estate of Pittard v. Commissioner,69 T.C. 391, 400 (1977); McGee v. Commissioner,61 T.C. 249, 256-257 (1973), affd. 519 F.2d 1121 (CA5 1975). This intent may be inferred from circumstantial evidence ( Powell v. Granquist,252 F.2d at 61; Gajewski v. Commissioner,67 T.C. 181, 200 (1976), affd. without published opinion 578 F.2d 1383 (CA8 1978); Beaver v. Commissioner,55 T.C. 85, 92-93 (1970)), including the implausibility of the taxpayer's explanations. Boyett v. Commissioner,204 F.2d 205, 208 (CA5 1953), affg. a Memorandum Opinion of this Couurt.[12]
Respondent need not prove the precise amount of the underpayment resulting from *582 fraud, but only that there is some underpayment and that some part of it is attributable to fraud. E.g., Lee v. United States,466 F.2d 11, 16-17 (CA5 1972); Plunkett v. Commissioner,465 F.2d at 303; Kreps v. Commissioner,351 F.2d 1, 6 (CA2 1965), affg. 42 T.C. 660 (1964). In carrying his burden, respondent may not rely on petitioner's failure to meet his burden of proving error in respondent's determinations as to the deficiencies (e.g., Habersham-Bey v. Commissioner,78 T.C. 304, 312 (1982), and cases there cited), but he may rely on the deemed admissions. Marshall v. Commissioner,85 T.C. 267 (1985). See Freedson v. Commissioner,65 T.C. 333, 335 (1975), affd. 565 F.2d 954 (CA5 1978); Rule 90 (f). Where fraud is determined for each of several years, respondent's burden applies separately for each of the years. Drieborg v. Commissioner,225 F.2d 216, 219-220 (CA6 1955), affg. in part and revg. in part an unreported Memorandum Opinion of this Couut. [13]Estate of Stein v. Commissioner,25 T.C. 940, 959-963 (1956), affd. sub nom. Levine v. Commissioner,250 F.2d 798 (CA2 1958). A mere understatement of income does not establish fraud. However, a pattern of consistent underreporting *583 of income for a number of years is strong evidence of fraud. Estate of Mazzoni v. Commissioner,451 F.2d 197, 202 (CA3 1971), affg. a Memorandum Opinion of this Court; [14]Otsuki v. Commissioner,53 T.C. at 106. 1973 and 1974
Respondent points to the following items as support for his contentions that petitioner's income tax returns for 1973 and 1974 were fraudulent with the intent to evade tax: (1) Petitioner did not report W-2 wages he received from Construction Company in the amount of $ 12,300 and $ 9,600 for 1973 and 1974, respectively. (2) Petitioner, when asked by Nisterchuk whether he had any W-2 wages during 1973 and 1974, told Nisterchuk he did not. (3) Petitioner maintained no personal books and records of various business transactions, wagering activities, and bingo income. (4) Petitioner did not file his Federal income tax returns until 2 days after his apartment was searched by law enforcement officers seeking records of his bingo activities. Petitioner admitted he omitted wages earned from his 1973 and 1974 tax returns in the amounts of $ 12,300 and $ 9,600, respectively. Petitioner also failed to claim credit for income *584 tax withholding in the amounts of $ 1,535.86 and $ 1,214.84, respectively. Yet, petitioner reported all his gambling income for 1973 and 1974. (Respondent has not challenged the accuracy of petitioner's reports of such income for 1973, 1974, 1975, or 1976.) We do not believe it is likely to report W-2 wages from which income tax has been withheld and the omission of which may easily be detected by the Internal Revenue Service, [15] *585 and yet correctly report illegal gambling winnings from which no estimated taxes have been paid and the omission of which may not easily be detected by the Internal Revenue Service. The only items petitioner omitted for 1973 and 1974 were his W-2 wages, a record of which Construction Company is required to keep. Petitioner's failure to report W-2 wages may have been negligent, [16] but his evidence of negligence is not, by itself, clear and convincing evidence of fraud. See Webb v. Commissioner,394 F.2d at 377; Carter v. Campbell,264 F.2d 930, 935-936 (CA5 (1919); Mitchell v. Commissioner,118 F.2d 308 (CA5 1941); Thurston v. Commissioner,28 T.C. 350, 355 (1957). Respondent also contends that evidence of fraudulent intent exists in that petitioner filed his delinquent tax returns 2 days after *586 law enforcement officers searched his apartment, citing Grosshandler v. Commissioner,75 T.C. 1, 20 (1980). Respondent apparently is contending that petitioner did not intend to file until his nonfiling was discovered. Respondent did not present any evidence showing that law enforcement officers did in fact search petitioner's apartment. Rather, the record merely indicates that an affidavit for a search warrant concerning petitioner's apartment was filed with the Common Pleas Court of Summit County, Ohio. Even if petitioner's apartment was searched two days before he filed his delinquent tax returns, this fact would not indicate petitioner's threat not to file until he was discovered, because petitioner hired Nisterchuk to prepare his tax returns in April 1978, before his apartment was searched. Respondent has persuaded us that petitioner failed to report his wage income for 1973 and 1974. Clearly, this resulted in an underpayment of tax for each of these years. But respondent has failed to persuade us by clear and convincing evidence that the underpayment of tax for either year is due in whole or in part to fraud on the part of petitioner. We hold for petitioner as to 1973 and *587 1974. 1977
Respondent points to the following items as support for his contention that petitioner's income tax return for 1977 was fraudulent: (1) On his 1977 tax return, petitioner omitted $ 39,411 of wagering income, $ 47,514.65 of net profit from City Supply, and $ 14,237.15 capital gain from the sale of property. (2) Petitioner did not maintain personal books and records of his various business transactions, wagering activities, and bingo income. (3) Petitioner refused to provide Nisterchuk with records concerning his income. (4) Petitioner did not file his tax returns until 2 days after his apartment was searched by law enforcement officers. See discussion, supra, as to 1973 and 1974. (5) Petitioner was convicted of engaging in organized crime, illegally conducting a bingo game, grand theft of $ 150 or more, and gambling for 1977. (6) Petitioner was convicted of willful evasion of Federal wagering excise tax for 2 months in 1977, and annual occupational tax for 1977. (7) Petitioner failed to report income from the sale of property owned by him but held in names of nominees. Petitioner omitted income items totalling $ 101,162 80 from his 1977 tax returns. Petitioner told Nisterchuk *588 to report $ 55,000 as gambling income for 1977. Petitioner failed to give Nisterchuk any records from which to accurately prepare his 1977 income tax returns. Failing to disclose information to one's accountant or tax return preparer is an indicium of fraud. Baumgardner v. Commissioner,251 F.2d 311, 323 (CA9 1957), affg. a Memorandum Opinion of this Court. [17] Petitioner also displayed a general disposition to defraud, from his receipt of income from illegal gambling activity, his failure to report that income, and his conviction of willful evasion of Federal wagering excise tax and annual occupational tax for 1977. See McGee v. Commissioner,61 T.C. at 260. Petitioner's failure to report income from the sale of property held in the names of nominees is an indicium of fraud. Conforte v. Commissioner,74 T.C. 1160, 1203 (1980), affd. in part and revd. in part 692 F.2d 587 (CA9 1982). Petitioner's 1977 omissions (and his 1977 criminal activities) sharply contrast with those for 1973 and 1974. For 1973 and 1974, he omitted W-2 income from a single source that respondent could check. For 1977 he omitted income from three different sources, each of which was *589 not easy for respondent to check and, in one instance, involved property held in the names of other people. His 1977 omissions amounted to more than 4-1/2 times his combined omissions for 1973 and 1974. Finally, he was convicted of several crimes related to his income-producing activities for 1977, including evasion of excise taxes. We conclude that respondent has shown, by clear and convincing evidence, that petitioner has an underpayment of income tax for 1977 and that some part of this underpayment was due to fraud. Petitioner contends that his situation closely parallels the taxpayer's situation in Devany v. Commissioner,T.C. Memo 1959-8. In Devany, the taxpayer underreported illegal gambling income over a 2-year period and kept inadequate books and records. Respondent did not present evidence as to the intelligence or education of the taxpayer nor as to the details of the taxpayer's business activities. Based on the entire record, the Court concluded that respondent failed to carry his burden of proof as to fraud. In the instant case, petitioner asserts that respondent failed to present any evidence as to petitioner's education, intelligence, or business activities, and *590 therefore failed to meet his burden of proof as to fraud. We reject petitioner's argument. Devany does not stand for the proposition that respondent must present evidence on a taxpayer's intelligence or education to meet his burden of proving fraud. Lack of schooling does not automatically require a finding that petitioner could not have filed fraudulent tax returns. E.g., Webb v. Commissioner,394 F.2d at 379-380, and cases cited therein; Estate of Temple v. Commissioner,67 T.C. 143, 162 (1976); Otsuki v. Commissioner,53 T.C. at 111. Rather, the taxpayer's intelligence or educational background is one factor which must be weighed in light of all the other factors in a particular case. In Devany, the focus was on whether the taxpayer knew what he was doing. In the instant case, we believe that petitioner knew what he was doing in 1977. We have found as follows (at 7, supra): On March 14, 1979, petitioner was convicted of the following crimes committed between September 1977 and June 1978: engaging in organized crime, illegally conducting a bingo game, grand theft of $ 150 or more, and gambling. On June 19, 1981, petitioner was convicted under section 7201 on three counts of *591 evading Federal excise taxes, as follows: wagering tax for January 1977 (sec. 4401), wagering tax for October 1977 (sec. 4401), and annual occupational tax for 1977 (sec. 4411). These convictions were affirmed on appeal. United States v. Merlo,704 F.2d 331 (CA6 1983). Thus, on two separate occasions, courts were convinced beyond a reasonable doubt that the petitioner had the intellectual capacity to understand what he was doing in 1977, and that what he was doing was in violation of criminal law. On one of those occasions, it was established that this intellectual capacity and understanding applied to petitioner's knowledge of what he must do with respect to various gambling tax provisions of the Internal Revenue Code of 1954. In particular, that conviction was for violation of section 7201, which provides, in pertinent part, as follows: SEC. 7201. ATTEMPT TO EVADE OR DEFAT TAX. Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony * * *. [Emphasis supplied.] Thus, the record in the instant case is sufficient to satisfy any burden that *592 respondent might have in this regard. In addition, petitioner was present at the trial and testified in the instant case. We observed him and believe that he had the requisite intellectual capacity. He could have presented evidence to show his limited education or intelligence, to rebut the fair inferences arising from the criminal convictions, but he did not do so. In the matter of his education or intelligence is as crucial as petition now says it is, then a permissible inference from petitioner's failure to offer relevant evidence that was surely in his possession is that, if the evidence had been offered, then it would have harmed petitioner's case. See Wichita Terminal Elevator Co. v. Commissioner,6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (CA10 1947). We hold for respondent as to 1977. In order to take account of the foreging, Decision will be entered for petitioner as to the additions to tax under section 6653(b) for 1973 and 1974; decision will be entered for respondent as to all other determinations.
Footnotes
1. Unless indicated otherwise, all section and chapter references are to sections and chapters of the Internal Revenue Code of 1954 as in effect for the years in issue. ↩
2. Of these amounts, self-employment taxes under chapter 2 are $ 284.40 for 1974, $ 1,113.90 for 1975, $ 1,208.70 for 1976, and $ 1,303.50 for 1977; the remaining amounts are chapter 1 income taxes. Note that, for 1976, the deficiency in petitioner's self-employment taxes exceeds the total deficiency; i.e., respondent has determined that petitioner overstated his 1976 chapter 1 tax liability by $ 230. ↩
3. The amounts of the additions to tax under section 6653(b) for 19973 and 1974, as determined by respondent, exceed the amounts of the deficiencies for these years because, under section 6653(c)(1), the base for this addition (the "underpayment") does not take into account the reduction for tax liabilities shown on any late-filed tax returns. As we find, infra, petitioner did not file his tax returns for 1973 and 1974 until June 13, 1978. Petitioner showed income tax liabilities of $ 12,472 on his 1973 tax return and $ 10,620 on his 1974 tax return. The same rule applies to additions to tax under section 6653(a) for 1975 and 1976. The parties do not explain why the latter additions do not appear to have been calculated on the same basis as the section 6653(b) additions for 1973 and 1974. We leave the parties as we find them on this point. Sec. 6214(a). Petitioner requested an automatic extension, until June 15, 1978, to file his 1977 tax return, and the return was filed within the extended period, so the base for the section 6653(b)↩ addition is the same as the deficiency.
4. Rule 151(e)(3) provides, in part, as follows: In an answering or reply brief, the party shall set forth his objections, together with his reasons therefor, to any proposed findings of any other party, showing the numbers of the statements to which his objections are directed; in addition, he may set forth alternative proposed findings or fact. In the instant case, although petitioner filed an answering brief, he failed to object to respondent's proposed findings of fact in accordance with Rule 151(e)(3). Consequently, we have assumed herein that petitioner has no objections to respondent's proposed finding of fact. Our findings of fact are, of course, based on the record in the instant case. Unless indicated otherwise, all rule references are to the Tax Court Rules of Practice & Procedure. ↩
5. Petitioner failed to respond timely to respondent's requests for admissions, and so these requested admissions are deemed admitted and conclusively established for purposes of the instant case. Freedson v. Commissioner,65 T.C. 333, 335 (1975), affd. 565 F.2d 94↩ (CA5 1978); Rule 90(f). We granted petitioner's motion to vacate his deemed admissions to respondent's conclusory requests as to fraudulent intent. 6. Petitioner applied for an automatic 2-month extension, until June 15, 1978, to file his 1977 tax return. ↩
7. The section 1202 deduction was increased to 60 percent for long-term capital gains after October 31, 1978, and then repealed for taxable years beginning after December 31, 1986. ↩
8. Section 6653(b) provides, in relevant part, as follows:
SEC. 6653. FAILURE TO PAY TAX. * * * (b) Fraud. -- If any part of any underpayment (as defined in subsection (c) of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. * * *
[The subsequent amendments of this provision (by sec. 325(a) of the Tax Equity and Fiscal Responsibility Act of 1982 (Pub. L. 97-248, 96 Stat. 324, 616) and by sec. 1503(a) of the Tax Reform Act of 1986 (Pub. L. 99-514, 100 Stat. 2085, 2742)) do not apply to the instant case.] ↩
9. SEC. 7454. BURDEN OF PROOF IN FRAUD, FOUNDATION MANAGER, AND TRANSFEREE CASES. (a) Fraud. -- In any proceeding involving the issue whether the petitioner has been guilty of fraud with intent to evade tax, the burden of proof in respect to such issue shall be upon the Secretary. ↩
10. T.C. Memo. 1970-274↩. 11. T.C. Memo. 1966-81↩. 12. Dated March 14, 1951. ↩
13. Dated February 24, 1954.↩
14. T.C. Memo. 1970-144↩. 15. Every employer who withholds income tax from wages of an employee must keep records showing the persons employed during the year, their identification numbers, addresses, wages subject to withholding, periods of employment, and amounts and dates of payments and deductions. Section 31.6001-5, Employment Tax Regs.↩
16. Respondent did not determine in the notice of deficiency (nor assert in the pleadings), in the alternative or otherwise, additions to tax under sections 6651(a)(1) or 6653(a) for 1973 or 1974. For these years, respondent apparently chose to place his reliance entirely on the 50-percent fraud addition, the imposition of which would preclude the simultaneous imposition of the late filing addition (sec. 6653(d)), and the negligence, etc., addition (sec. 6653(a)↩ applied, for these years, only if a part of the underpayment "is due to negligence or intentional disregard of rules and regulations (but without intent to defraud)"). Accordingly, we do not determine whether petitioner's late filing of his tax returns or his negligence should give rise to the 25-percent or the 5-percent additions to tax for either of these years. Sec. 6214(a). 17. T.C. Memo. 1956-112↩.