T.C. Memo. 1995-585

UNITED STATES TAX COURT

C. RICHARD ROOSE, JR. AND BETTY B. ROOSE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4185-94.                    Filed December 6, 1995.

<u>John Kennedy Lynch</u>, for petitioners.

<u>John E. Budde</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>:  In a notice sent December 28, 1993, respondent determined deficiencies in, and additions to, petitioners' Federal income taxes as follows:

**Additions to Tax**

| Year | Deficiency | Sec. 6653(b)(1) | Sec. 6653(b)(2) | Sec. 6653(b)(1)(A) | Sec. 6653(b)(1)(B) | Sec. 6661(a) |
|------|------------|-----------------|-----------------|--------------------|--------------------|--------------|
| 1984 | $50,374.00 | $25,187.00 | [1] | -- | -- | $12,593.50 |
| 1985 | 15,577.00 | 7,788.50 | [2] | -- | -- | 3,894.25 |
| 1986 | 24,752.00 | -- | -- | $18,564.00 | [3] | 6,188.00 |

[1]50 percent of the interest due on $50,374.
[2]50 percent of the interest due on $15,577.
[3]50 percent of the interest due on $24,752.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After concessions by both parties, we must decide whether petitioners are liable for the additions to tax for fraud for 1984, 1985, and 1986; whether petitioners are liable for the additions to tax for substantial understatement of liability for 1984 and 1986; and whether the statute of limitations bars the assessment of deficiencies and additions to tax for 1984, 1985, and 1986.

FINDINGS OF FACT

Petitioners C. Richard Roose (Mr. Roose) and Betty B. Roose (Mrs. Roose) resided in Middlefield, Ohio, when their petition was filed. During the years in issue and at the time of trial, petitioners were husband and wife.

Mr. Roose was a pharmacist at all relevant times. Mrs. Roose also attended pharmacy school but did not complete her pharmacy degree. As part of their pharmacy school course work,

petitioners completed a 3-month bookkeeping class directed solely at learning an accounting system for use in a drugstore setting.

Mr. Roose owned and operated Roose Drug Store (the store) as a cash basis sole proprietorship during the years in issue. He worked 60 to 70 hours per week in the store, and Mrs. Roose worked 20 to 30 hours per week.

Petitioners shared the accounting and bookkeeping responsibilities of the store. The store used a single-entry accounting system known as "Drug Topics", created especially for use by drugstores. At the end of a typical day, Mr. Roose would close out one of the two cash registers in the store. The totals from the first register would be entered in the other cash register. The second register would then be closed out, reflecting all of the day's activities. Mr. Roose used the information from this cash register tape to prepare the Daily Cash Report. The Daily Cash Report is a form containing various blanks to be filled in with information from the cash register tape. Various items were represented on the Daily Cash Report, including "Received on Account", "Cash Paid Out", and five categories of "Cash Sales". Mr. Roose generally recorded all of the sales under "Cash Sales (I)" and the amounts received on account through in-person payments under "Cash Sales (II)". The "Received on Account" blank on the Daily Cash Report form was not utilized.

After the Daily Cash Report was finished, a deposit slip would be completed to reflect the day's transactions, and Mr. Roose would usually make the bank deposit the following business day.  Mr. Roose also maintained the store's checkbook. He recorded deposits on the check stubs and "looked at" the bank statements.

Mrs. Roose used the Daily Cash Reports that were prepared by Mr. Roose to complete entries in the Drug Topics book.  The Drug Topics book compiled the daily information into month-by-month income and expense reports.  Mrs. Roose prepared the Drug Topics book at the end of each month or shortly thereafter.  Both the Daily Cash Reports and the store's checkbook were used to record expense items in the Drug Topics book.  Certain deposits not reflected on the Daily Cash Reports appear in the Drug Topics book entries prepared by Mrs. Roose.

Although Mr. Roose knew that Mrs. Roose relied on the Daily Cash Reports to complete the Drug Topics book, some transactions were omitted from the Daily Cash Reports.  The store accepted manufacturers' coupons and received rebates in the form of checks from the manufacturers.  The amount of the coupon rebates was not included in the Daily Cash Report total.  The amounts received from the coupons were not deposited into the store's business account at Middlefield Banking Co. (the Middlefield account) but were instead deposited into various accounts at Peoples Savings, some of which were in the names of petitioners' children.

The Daily Cash Reports also did not include credit card sales. The credit card receipts were deposited into an account at Bank One or Huntington Bank, not into the Middlefield business account.

The Daily Cash Reports did not always reflect what petitioners referred to as "special deposits". Special deposits consisted of payments on accounts received from customers or third parties, such as insurance companies, through the mail. In-person payments on accounts were included in the Daily Cash Report total. If one or two checks were received in the mail, the payments were rung up on the cash register and were included in the Daily Cash Report total. If more than one or two checks were received by mail, the checks were totaled using an adding machine, a separate deposit slip was completed, and the practice varied as to whether a corresponding entry was made in the Daily Cash Report. All special deposits were eventually recorded on the checkbook stubs but not at the time that each special deposit was made.

As examples of the omissions from the Daily Cash Reports, during January and March 1984, no special deposits were recorded in the Daily Cash Reports or the Drug Topics book. Only one special deposit was recorded for February 1984, and one special deposit was recorded for April 1984. From January through April 1984, however, customers and third parties were still making payments on their accounts through the mail.

Similar omissions occurred in 1985. In February 1985, petitioners failed to record six special deposits; in May 1985, petitioners failed to record eight special deposits.

Petitioners employed Theodore W. Reed (Reed) to prepare their personal income tax returns and the store's employment tax returns for 1984, 1985, and 1986. Reed was paid $300 per year and was not expected to audit petitioners' books and records. Reed was provided only the Drug Topics book to use in preparing the returns. Reed did not receive the check stubs, Daily Cash Reports, cash register tapes, or bank statements. Although petitioners knew that income omitted from the Drug Topics book would not be reported on their tax return, petitioners did not inform Reed that all coupon redemption receipts and all credit card sales receipts were not reflected in the Drug Topics book. Reed was not aware that certain special deposits were not reflected in the Drug Topics book.

The Internal Revenue Service (IRS) began an examination of petitioners in May 1987. During the course of the IRS examination, petitioners were questioned about their accounting practices, including their failure to report coupon rebates as income. Mr. Roose explained to the revenue agent that it was industry practice not to report coupon rebates as income and that he did not report the coupon rebates because he was trying to create a retirement fund.

The IRS also inquired about petitioners' failure to report credit card sales receipts.  Petitioners explained that, because they did not consider credit card sales as cash-on-hand, they did not enter credit card sales into the cash register or include those amounts as part of the Daily Cash Report total.  Mr. Roose falsely represented to the revenue agent that he wrote checks from the Bank One account to the Middlefield account to transfer funds back to the store.

The use of the manual accounting system for certain payments on accounts received by mail was also questioned during the examination.  Mr. Roose told the revenue agent that the manual system saved time when numerous checks arrived in the mail.  In the same conversation, Mr. Roose stated that the use of the cash registers allowed him to keep accurate records of how much money came in and went out of the store.

In September 1987, the case was referred to the criminal investigation division.  Mr. Roose was indicted for attempted income tax evasion relating to petitioners' 1984 and 1985 returns.  After a trial, Mr. Roose was found not guilty.

                              OPINION

Section 6501(a) generally provides that income tax must be assessed within 3 years after the filing of a return or the due date for the return, whichever is later.  Section 6501(c)(1) provides for an exception to the general period of limitations in the instance of a fraudulent return.  Respondent's burden of

showing that respondent comes within the exception to the period of limitations is the same as that which she bears in sustaining the addition to tax for fraud under section 6653(b). Botwinik Bros. of Mass., Inc. v. Commissioner, 39 T.C. 988, 996 (1963).

The addition to tax in the case of fraud is a civil sanction provided primarily as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud. Helvering v. Mitchell, 303 U.S. 391, 401 (1938). For 1984 and 1985, section 6653(b)(1) provides for an addition to tax equal to 50 percent of the entire underpayment when any part of an underpayment is due to fraud, and section 6653(b)(2) provides for an addition to tax equal to 50 percent of the interest payable under section 6601 for that portion of the underpayment that is attributable to fraud. For 1986, section 6653(b)(1)(A) provides for an addition to tax equal to 75 percent of the underpayment attributable to fraud, and section 6653(b)(1)(B) provides for an addition to tax equal to 50 percent of the interest payable under section 6601 for that portion attributable to fraud.

Respondent has the burden of proving, by clear and convincing evidence, that some part of an underpayment for each year was due to fraud. Sec. 7454(a); Rule 142(b). For 1984 and 1985, respondent must prove the specific portion of the underpayment of tax attributable to fraud for purposes of section 6653(b)(2). For 1986, section 6653(b)(2) provides:

(2) Determination of portion attributable to fraud.--If the Secretary establishes that any portion of an underpayment is attributable to fraud, the entire underpayment shall be treated as attributable to fraud, except with respect to any portion of the underpayment which the taxpayer establishes is not attributable to fraud.

Respondent's burden with respect to fraudulent intent is met if it is shown that the taxpayer intended to conceal, mislead, or otherwise prevent the collection of such taxes.  Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968); Webb v. Commissioner, 394 F.2d 366, 377 (5th Cir. 1968), affg. T.C. Memo. 1966-81.  The existence of fraud is a question of fact to be resolved upon consideration of the entire record.  Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978).  Fraud will never be presumed.  Beaver v. Commissioner, 55 T.C. 85, 92 (1970).  Fraud may, however, be proved by circumstantial evidence because direct proof of the taxpayer's intent is rarely available.  The taxpayer's entire course of conduct may establish the requisite fraudulent intent.  Stone v. Commissioner, 56 T.C. 213, 223-224 (1971); Otsuki v. Commissioner, 53 T.C. 96, 105-106 (1969).

Petitioners contend that respondent has failed to prove fraud.  Petitioners argue that they maintained adequate records and provided those records in the form of the Drug Topics book to Reed, their accountant, for each of the years in issue.  Petitioners attempt to blame Reed for their underreporting of income.  They argue that Reed should have asked for supporting

documentation, such as bank statements, for the Drug Topics book totals.  Petitioners also argue that they did not conceal or attempt to divert cash without recording cash receipts.

Fraudulent intent may be inferred from various kinds of circumstantial evidence, or "badges of fraud", including understatement of income, inadequate records, or implausible or inconsistent explanations of behavior.  Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986), affg. T.C. Memo. 1984-601. The record in this case is replete with clear and convincing evidence of petitioners' fraudulent intent.

Petitioners understated their income in each of the years in issue by intentionally failing to report receipts from credit card sales that were deposited in the Bank One and Huntington Bank accounts, intentionally failing to report receipts from coupon redemptions that were deposited in various Peoples Savings accounts, and intentionally failing to report numerous special deposits during the years in issue.  See Webb v. Commissioner, supra at 379; Marcus v. Commissioner, 70 T.C. 562, 577 (1978), affd. without published opinion 621 F.2d 439 (5th Cir. 1980).

Although petitioners had each received 3 months of training in the accounting system that they used in the store, they failed to utilize the system to keep accurate and adequate records. They deliberately distorted the accounting system by failing to record certain store receipts.  By providing the distorted

records to Reed, petitioners succeeded in understating their income in each of the years in issue.

Petitioners have made various implausible and false statements. Mr. Roose falsely stated to a revenue agent in the course of the IRS examination that he wrote checks from the Bank One account to the Middlefield account to place the credit card sales receipts back into the business account. Mr. Roose also stated during the IRS examination that it was an industry practice not to report coupon redemption income and, in an attempt to explain his failure to report, that he was using these funds to build a retirement account. Both of these arguments are without merit and, moreover, indicate a fraudulent intent. Petitioners' special manual system for depositing payments on accounts received by mail has not been reasonably explained. Mr. Roose's explanation that he used the manual system because it "saved time" is implausible in light of his admission that he used cash registers in the store because they produced accurate records. Furthermore, Mrs. Roose stated that she used only the Daily Cash Reports to complete the Drug Topics book but could not offer an explanation as to how certain deposits not appearing on the Daily Cash Report appeared in the Drug Topics book.

Petitioners state that their reliance on Reed to prepare their tax returns shows a lack of fraudulent intent. For petitioners to prevail on their reliance argument, however, they must have provided the accountant with full and correct

information from which to prepare the returns. See <u>Morris v. Commissioner</u>, T.C. Memo. 1992-635, affd. without published opinion 15 F.3d 1079 (5th Cir. 1994); <u>Merlo v. Commissioner</u>, T.C. Memo. 1987-570. In this case, petitioners' alleged reliance on Reed does not excuse them from the fraud addition to tax.

Petitioners hired Reed to prepare their personal income tax returns and the store's employment tax returns. Petitioners did not intend for Reed to determine their gross receipts or their expenses or to audit the store's books, as indicated by the amount that petitioners paid Reed and Mr. Roose's testimony at trial. Although petitioners contend that they did not have time to review their returns before they were filed, Mr. Roose's testimony at trial suggested that this pattern did not change even after he was indicted for tax fraud. No evidence has been presented to indicate that petitioners' returns did not accurately reflect the information petitioners provided to Reed. Because of petitioners' intentional failure to report credit card sales receipts, coupon redemption receipts, and certain special deposits and due to no fault of his own, Reed was without the information necessary to reflect accurately petitioners' income on their tax returns for the years in issue.

This case is comparable to <u>Estate of Temple v. Commissioner</u>, 67 T.C. 143 (1976). We incorporate the same analysis here. The Court's statements in <u>Estate of Temple</u>, may be adapted to this case as follows:

[Petitioners contend] that * * * [they], being unversed in matters of accounting, relied totally upon * * * [Reed] to insure the accuracy of * * * [their] records and prepare * * * [their] tax returns.  * * * [Petitioners] further contend that the resultant understatements are not such as would cause * * * [petitioners] to be aware that * * * [their] income was underreported.  We cannot agree with either contention.

At the outset we are not impressed with * * * [petitioners'] attempt to characterize * * * [themselves] as * * * unknowledgeable * * * [businesspeople].  * * * the record shows that * * * [the Rooses had their] fingers on the pulse of the financial affairs of * * * [Roose Drug Store].

* * * [Petitioners'] conduct was intimately entwined with the inaccurate recording of * * * [their] business income.  * * *

While a taxpayer's reliance upon his accountant to prepare accurate returns may indicate an absence of fraudulent intent, John Marinzulich [v. Commissioner], 31 T.C. 487, 490 (1958), this is true in the first instance only if the accountant has been supplied with all the information necessary to prepare the returns. Petitioner[s] [argue] in this regard that * * * [Reed] had total access to all of * * * [petitioners'] books and records, so that even though the * * * [Drug Topics book] was inaccurate, a thorough professional job of accounting would have uncovered the inaccuracies.  Of course the thorough audit by respondent's agents did discover many omitted and erroneous entries.  However, we cannot conclude on the basis of the record before us that * * * [Reed] was retained to check with * * * [petitioners'] customers in order to find out whether they made payments to * * * [petitioners] which were not recorded in the * * * [Drug Topics book] or to otherwise doublecheck the * * * [Drug Topics book] entries made by * * * [Mrs. Roose].  The evidence points to the contrary.  * * *  [Id. at 162-163; fn. ref. omitted.]

Considering the entire record, we conclude that respondent has proven by clear and convincing evidence that the entire amount of the underpayments of tax on petitioners' returns for

the years in issue was due to fraud.  The statute of limitations, therefore, does not bar assessment of the deficiencies or the additions to tax for fraud for the years in issue.

Petitioners have presented no evidence or argument regarding the additions to tax under section 6661(a) for 1984 and 1986. The exceptions under section 6661(a)(2)(B) regarding substantial authority for the tax treatment and adequate disclosure in the return do not apply in this instance.  Therefore, respondent's determination will be sustained.

To reflect the foregoing and concessions of the parties,

Decision will be entered

under Rule 155.