Helen Luella BENNA, Administratrix of the Estate of Michael Andrew Benna, Deceased, Robert Paul Penzenik, Administrator of the Estates of Cyril James Pete, Edwig Pete, Gregory Pete, and Roy Kirk, all Deceased, Gabriel Bighead, Gabriel Leo Tom, Nora C. Tom, Alec Hunt, Emily B. Hunt, Joseph Washington, Stephen B. Bogeyaktuk, Joe Coffee, Victor J. Steve, Alice C. Steve, George G. Pete, Jeanette C. Pete, Francis Johnson, Rita Johnson, Leo P. Johnson, Mamie Johnson, Vincent Martin, Alice Martin, John P. Henry, Ronna M. Henry and Herbert Alanska, Plaintiffs-Appellants,

v.

REEDER FLYING SERVICE, INC.,
Defendant-Counter-Plaintiff,

and

Page Airmotive, Inc.,
Defendant-Appellee,

Helen Luella BENNA, Administratrix of the Estate of Michael Andrew Benna, Deceased, Robert Paul Penzenik, Administrator of the Estates of Cyril James Pete, Edwig Pete, Gregory Pete, and Roy Kirk, all Deceased, Gabriel Bighead, Gabriel Leo Tom, Nora C. Tom, Alec Hunt, Emily B. Hunt, Joseph Washington, Stephen B. Bogeyaktuk, Joe Coffee, Victor J. Steve, Alice C. Steve, George G. Pete, Jeanette C. Pete, Francis Johnson, Rita Johnson, Leo P. Johnson, Mamie Johnson, Vincent Martin, Alice Martin, John P. Henry, Ronna M. Henry and Herbert Alanska, Plaintiffs,

v.

REEDER FLYING SERVICE, INC., Defendant-Counter-Plaintiff Appellant,

and

Page Airmotive, Inc., Defendant-Counter-Defendant Appellee.

Nos. 75–3828, 76–1002.

United States Court of Appeals,
Ninth Circuit.

July 14, 1978.

Harold D. Johnson (argued), Seattle, Wash., for plaintiffs-appellants.

Charles E. Tulin, Anchorage, Alaska (argued), for defendant-counter-plaintiff.

Russell Holloway, Oklahoma City., Okl. (argued), for defendant-appellee.

Before WALLACE and ANDERSON, Circuit Judges, and EAST,[*] District Judge.

J. BLAINE ANDERSON, Circuit Judge:

On July 3, 1970, a twin-engine DC–3 aircraft owned and operated by Reeder Flying Service of Twin Falls, Idaho, crashed and burned shortly after take-off from a runway in McGrath, Alaska. The aircraft was carrying twenty-five Bureau of Land Management forest firefighters, their firefighting equipment, and a crew of two. Copilot Michael Benna and four passengers were killed; fourteen other passengers were injured.

During take-off, the right propeller of the aircraft, together with a portion of the nose case and reduction gear broke loose from its engine. While the aircraft did climb a short distance on one engine, the pilot was not able to keep it airborne and it crashed in trees about a mile from the runway.

Two theories were advanced at trial as to why the propeller broke free from the engine. The first theory advanced against Reeder Flying Service (Reeder) was that the pilot negligently and prematurely retracted the landing gear during take-off, while the wheels of the plane were still on the ground. As the landing gear retracted,

---

[*] The Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

the right wing dropped down and the propeller struck the runway. The force of the propeller striking the runway ruined the propeller, and caused it to break free from the engine.

The second theory advanced by plaintiffs and joined in by Reeder was against Page Airmotive, Inc. (Page). In 1966, Page Airmotive sold the right engine to Reeder. In March of 1970, three months before the accident, Page performed a major overhaul on the same engine. The major overhaul consisted of breaking the engine down into its component parts, replacing defective or worn parts as needed and reassembling the engine. The engine had operated satisfactorily for approximately 130 hours between the time of the overhaul and the accident. Plaintiffs (and Reeder) contended that during the overhaul, Page had negligently installed a certain knuckle pin and bushing which did not fit. Because these parts did not fit, they eventually caused the engine to break up internally and the propeller to break away from the engine.

Page denied any negligence in the overhaul and placed the blame entirely on the pilot's error in prematurely retracting the landing gear.

The jury returned a verdict in favor of plaintiffs (except Benna, the co-pilot) against Reeder and in favor of Page against both Reeder and the plaintiffs. In other words, the jury found that the cause of the engine failure and subsequent crash was due to pilot error and not due to a negligent or defective engine overhaul by Page.

Plaintiffs and Reeder both moved for a new trial which was denied. They appealed. We affirm.

■ Appellants' (plaintiffs and Reeder) primary contention on appeal is that they are entitled to a new trial because the jury viewed certain unadmitted and inadmissible evidence.

At trial a large number of engine and propeller parts were admitted into evidence. Because these exhibits were too large to remove to the jury room, it was stipulated that they would be left in the courtroom and the jury could view them at will, which they did. Several exhibits and photographs which had *not* been admitted into evidence were inadvertently left on the judge's bench and the jury viewed these exhibits along with the other evidence. The only important one of these unadmitted exhibits which the jury viewed was an "Aircraft Accident Report" prepared by Franklin Malone, the investigator in charge for the National Transportation Safety Board (NTSB).

There is no question that it was error for the jury to view this accident report since by statute the report is inadmissible evidence. *See* 49 U.S.C. § 1441(e).[1] However, not all error is reversible error or error which requires a new trial. We are directed to "disregard any error or defect in the proceedings which does not affect the substantial rights of the parties." Fed.R.Civ.P. 61; 28 U.S.C. § 2111; *see generally* 11 C. Wright & A. Miller, Federal Practice and Procedure § 2883 (1973).

The question which presents itself then is whether the jury's view of the inadmissible accident report so prejudiced appellants' case as to require a new trial. We have thoroughly reviewed the entire 2,355 pages of the reporter's transcript, the 352 pages of the clerk's record, the exhibits, and the 47 pages of the Malone accident report. From this review, it is our conclusion that a new trial is not warranted. In light of the entire record, we are convinced that the error

---

1. 49 U.S.C. § 1441(e) provides:

   "*Use of records and reports as evidence*
   (e) No part of any report or reports of the National Transportation Safety Board relating to any accident or the investigation thereof, shall be admitted as evidence or used in any suit or action for damages growing out of any matter mentioned in such report or reports."

   See generally, *Berguido v. Eastern Airlines, Inc.*, 317 F.2d 628 (3rd Cir. 1963); *American Airlines, Inc. v. United States*, 418 F.2d 180 (5th Cir. 1969); *Beech Aircraft Corp. v. Harvey* (Alaska 1976), 558 P.2d 879; *Todd v. Weikle* (1977), 36 Md.App. 663, 376 A.2d 104.

complained of did "not affect the substantial rights of the parties" and was therefore harmless. Fed.R.Civ.P. 61; 28 U.S.C. § 2111.

■ The NTSB report itself was compiled by investigator Malone shortly after the accident. Roughly half of the report consists of such innocuous data as the time of the crash, the weather conditions, the serial numbers of the plane and the engine, and the type of instruments the plane carried, etc. The remainder of the report contains statements by various individuals regarding what they saw or heard and a narrative statement prepared by Malone about what he saw and was told by the witnesses. It is our view that everything important in the NTSB report was substantially covered by direct testimony and cross-examination during the course of the trial. There were no bombshells or surprises in the report which the jury would have seen that could have prejudiced them in favor of one party or the other. We find that the NTSB accident report as a whole was merely cumulative of the other voluminous evidence produced at trial. Generally speaking, erroneously admitted evidence is not prejudicial if the facts had already been shown by admissible evidence. 11 Wright & Miller, Federal Practice and Procedure, § 2885, p. 288. *See Eckis v. Graver Tank & Mfg. Co.*, 289 F.2d 335, 338 (9th Cir. 1961).

Most importantly, the accident report contained no official NTSB conclusion or opinion on the cause of the accident. The official conclusion as to the cause of the accident was contained in the "probable cause" report issued by the NTSB and is quite different from Malone's accident report. The "probable cause" report consists of a single sheet document and was prepared by NTSB staff in Washington. There is no question that the jury did *not* see this "probable cause" report. Had the jury seen it, we would have no trouble granting a new trial since this report would have definitely prejudiced the jury by unfairly placing a government stamp of officiality on the probable cause of the accident. Such was not the case, however, with the report

prepared by investigator Malone. This report just did not contain any official position or conclusion on the cause of the accident.

It is interesting to note in passing that prior to the adverse verdict, neither plaintiffs' counsel nor Reeder's counsel were very concerned that the jury might have seen Malone's accident report. Instead, their concern was whether or not the jury had seen the NTSB "probable cause" report. For example, while counsel were discussing with the court what to do about the jury's having viewed the unadmitted exhibits, plaintiffs' counsel stated:

"As far as the plaintiffs are concerned, your Honor, with respect to this problem, there is only one document that we are really concerned about the jury having seen or not seen. It is a one-page document and it bears 'National Transportation Safety Board.' It is Page's exhibit Z for identification, commonly known as the probable cause report. If the jury read this we would be disposed in one direction and if they did not we would be inclined to leave things as they are and let the jury continue to deliberate. I think it is feasible to hold it up from a distance and ask—for the Court to ask the jury whether anybody saw it and whether it has made any impact on their deliberations and if so can they exclude it from their considerations whatever effect this document had. If anybody has seen it and can tell us that they can exclude it from their consideration we think we would be willing to let them continue to deliberate." (R.T. 2328)

In sum, we find that there was substantial evidence to support the jury's verdict and that the NTSB accident report was merely cumulative of the already existing evidence at trial. We agree then with the District Court's holding "that the document was not of a character to prejudice the unsuccessful parties and any error in considering it by the jury was harmless." (C.R. 325)

Plaintiffs also contend that the cumulative effect of other allegedly erroneous rul-

ings by the trial court prejudiced their case and denied them a fair trial. We are unconvinced.

■ First, plaintiffs contend that the trial court unfairly emphasized Page's case in its opening comments to the jury. It is true that the trial court did refer to Page's trial memorandum and not to the plaintiffs in its opening comments to the jury. However, these comments were very brief and the court beforehand cautioned the jury this way:

"And what I say now or at any time during the course of the trial pertaining to the facts of the case are not evidence and you must not consider them as evidence. . . . During the course of the trial any comments or statements I make with reference to any facts or any testimony or any documents are merely my own thinking and are not evidence and you must disregard those." (R.T. 1-2).

After the trial court was informed that it had referred only to Page's trial memorandum and not to plaintiffs in its introduction to the jury, the court, just before opening statements, again cautioned the jury thusly:

"Members of the jury, you will recall that earlier today I attempted to explain to you or at least tell you in general what this case would be about. In doing so I had before me what are known as pretrial statements or memorandum of counsel and in order so that I wouldn't confuse you with the dates or things like that, I referred to one of them. I think that I mentioned that it was the one of defendant Page. I want to make certain that you understood that anything I said by way of explanation is not evidence and must be completely disregarded by you and that you are to consider only the testimony of witnesses, the exhibits and any stipulations that have been made by counsel. I want to assure you that I was reading from one party's version of what had happened and I want you to definitely understand, and I am sure you will as the trial progresses, that the parties are not in agreement as to how the accident happened. . . . So without further explanation we will proceed with the opening statements." (R.T. 13-14)

Plaintiffs' counsel then proceeded with his opening statement which clearly set forth plaintiffs' theory of the case.

Because the trial court's comments about Page's theory of the case were so brief and the court's cautionary language so thorough, we find that plaintiffs' case was not prejudiced in any significant way by the court's opening comments.

■ Secondly, plaintiffs contend that Page was given an unfair advantage in being able to put forth surrebuttal evidence after plaintiffs' rebuttal witnesses. Plaintiffs argue that this was unfair because it gave Page the "last word" in presenting evidence to the jury. We note, however, that in its rebuttal plaintiffs brought out a new witness and some new evidence. Page had every right to counter this and the trial court so ruled. We find no abuse of the trial court's discretion in allowing Page's surrebuttal evidence. *Gross v. United States*, 201 F.2d 780, 784 (9th Cir. 1953); 88 C.J.S. Trial § 103; 5A C.J.S. Appeal and Error § 1605; Rule 102, Federal Rules of Evidence.

■ Thirdly, plaintiffs contend that they should have been able to introduce into evidence the entire overhaul report prepared by Page in overhauling the aircraft engine involved in this suit. This overhaul report is quite voluminous and dealt with many, many different parts in the overhauled engine. The only parts of concern in this lawsuit were the knuckle pin and bushing which plaintiff alleged had been installed with an improper fit. The only page in the overhaul report which dealt with the knuckle pin and bushing was page 10. This page was admitted into evidence. Apparently, some of the other pages in the overhaul report were somewhat sloppily prepared. Plaintiffs wanted to introduce these other pages to infer to the jury that perhaps the whole overhaul was negligently performed. In denying the motion for a new trial, the District Court stated that:

"Page 10 of the report is the only one that relates to the parts in question in this lawsuit. The Court did not exclude it. The other pages concerned other parts. Their only possible relevance would be to show that Page Airmotive did not use the forms as a checklist. From this failure to do so plaintiffs would infer that an out of tolerance part was used. Even assuming that the proof would have a tendency to support this inference, the Court must consider Rule 403 of the Rules of Evidence. It provides:

'Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.'

"The prejudice here would result from the probability that the jury would be misled into thinking that the condition of the reduction gears or the pistons or some other part in the report was at issue in the case. They never were. Confusion of the issues would be likely. The jury would be misled. There would be undue delay and waste of time. All of this for the slight value the reports might have had. Its probative value was substantially outweighed by the dangers above stated. This is especially true because expert witnesses could testify to the condition of the parts when they were installed. The exclusion of the overhaul reports was proper. McCormick, Evidence, 2nd ed., § 185 notes 32 and 33." (C.R. 320–321)

On our review of this record we agree with this finding by the District Court.

■ Finally, plaintiffs contend that there was reversible error in giving the jury an instruction dealing with contributory negligence. It was stipulated that there was no contributory negligence on the part of the plaintiffs. While the instruction[2] does make an inadvertent reference to the "plaintiffs" (which, of course, includes Reeder as a counter-plaintiff), it ends by instructing the jury that the issue of contributory negligence applies only as to Reeder on its claim against Page.

Realizing the possibility of ambiguity and confusion, the District Court and counsel prepared another instruction. This instruction was given to the jury at some point prior to their reaching the verdict. Plaintiffs' argument now is that they should get a new trial because the jury may have been confused by the first unclear instruction. We disagree. While true that the first instruction was not a model of clarity even if we were to assume that the jury paid no heed to the second clearer instruction, we find that the original instructions taken *as a whole*, as they must be (*see United States v. Park*, 421 U.S. 658, 674, 95 S.Ct. 1903, 44 L.Ed.2d 489 (1975)), adequately instructed the jury that the contributory negligence issue only applied between Reeder and Page. Added to this is the fact that absolutely no evidence or argument was presented to the jury regarding any type of contributory negligence on the part of the plaintiffs. (Plaintiffs' opening brief, p. 62). Therefore, we find that plaintiffs were not unfairly prejudiced by the first jury instruction, even if the jury never considered the second clarifying instruction.

It is our conclusion in this case that neither plaintiffs nor Reeder were denied a fair trial. On our review of the record, substantial justice was done. Therefore, the judgment of the District Court will be and it is

AFFIRMED.

---

2. This instruction reads:

"In addition to denying that any negligence of the defendants proximately caused any injury or damage to the plaintiffs, the defendants allege, as a further defense, that some contributory negligence on the part of the plaintiffs was a proximate cause of any injuries, and consequent damages plaintiffs may have sustained. Contributory negligence is fault on the part of a person injured, which cooperates in some degree with the negligence of another, and so helps to bring about the injury.

"*However, the defense of contributory negligence and the instructions relating to that defense are submitted to you only as to Reeder on its claim against Page.*" (R.T. 2287) (emphasis added)