**In re Reed E. SLATKIN, Debtor.**

**Linda Rosen et al., Appellants,**

**v.**

**R. Todd Neilson, Trustee of the Chapter 11 Bankruptcy Estate of Reed E. Slatkin, Appellee.**

**No. CV 03–02527RSWL.**

United States District Court, C.D. California.

June 9, 2004.

Howard D. Kollitz, Richard D. Burstein, Kim Tung, Gregory M. Shamo, James B. Devine, Danning, Gill, Diamond & Kollitz, Los Angeles, CA, for appellants.

R. Alexander Pilmer, Mark T. Cramer, Richard L. Wynne, Kirkland & Ellis, John P. Reitman, Andrew S. Rotter, Gumport,

Reitman & Montgomery, Los Angeles, CA, for appellee.

## AMENDED ORDER

LEW, District Judge.

### I. INTRODUCTION

This consolidated appeal arises from the many adversary proceedings brought by R. Todd Neilson, the trustee (the "Trustee") of the Chapter 11 bankruptcy estate (the "Estate") of Reed E. Slatkin ("Slatkin"), to set aside and recover certain fraudulent transfers for the benefit of the Estate. On February 23, 2003, the Bankruptcy Court entered an order granting the Trustee's motion for partial summary judgment in over fifty adversary proceedings on the narrow issue of whether Slatkin had "actual intent to hinder, delay, or defraud" his creditors when he made the transfers which the Trustee seeks to recover as fraudulent. See Cal. Civ.Code § 3439.04.[1] Appellants are defendants in these adversary proceedings who are challenging on appeal the Bankruptcy Court's finding that there is no genuine issue of material fact that Slatkin had the requisite fraudulent intent. Appellants contend that the Bankruptcy Court erred in granting the motion by relying almost solely on Slatkin's plea of guilty to various charges of wire and mail fraud in his federal criminal proceedings.[2] For the reasons set forth below, this Court **AFFIRMS** the Bankruptcy Court's grant of partial summary judgment.

### II. FACTUAL BACKGROUND

From 1986 to May 2001, Slatkin obtained hundreds of millions of dollars from hundreds of individuals and entities, purportedly for the purpose of investing such funds for their benefit. On May 1, 2001, Slatkin filed for bankruptcy under Chapter 11. It was later revealed that Slatkin may have used the bulk of the funds to fuel a "Ponzi" scheme, whereby he paid investors "returns" with funds raised from other investors.[3] On March 26, 2002, Slatkin pleaded guilty to fifteen felony counts, and in his Plea Agreement, admitted to having operated a Ponzi scheme since 1986. On September 2, 2003, Slatkin was sentenced to fourteen years in prison.

In August 2002, the Trustee began the first of hundreds of adversary proceedings against investors who had allegedly received more on their investments with Slatkin than what they had given him. The Trustee contends that the transfers Slatkin made in furtherance of his alleged Ponzi scheme were fraudulent, and therefore, avoidable and recoverable from those investors who made a "return" on their investments.

On November 18, 2002, the Trustee filed a motion for partial summary judgment on the issue of whether Slatkin had the "actual intent to hinder, delay, or defraud" his creditors as to each transfer made during 1986 and 2001 within the meaning of California's fraudulent transfer statute, California Civil Code Section 3439.04. The

---

**1.** Cal. Civ.Code § 3439.04 states in relevant part:

"A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows:

(a) With actual intent to hinder, delay, or defraud any creditor of the debtor."

**2.** Slatkin was criminally prosecuted in the case *United States v. Reed E. Slatkin*, No. CR 02–313 (C.D.Cal. January 28, 2004).

**3.** "A 'Ponzi' scheme is any sort of fraudulent arrangement that uses later acquired funds or products to pay off previous investors." *Danning v. Bozek (In re Bullion Reserve of N. Am.)*, 836 F.2d 1214, 1219 n. 8 (9th Cir.1988).

Bankruptcy Court held a hearing on January 17, 2003 and granted the Trustee's motion, finding that Slatkin's Plea Agreement conclusively established his actual intent to defraud between 1986 and May 2001. An order granting the motion was entered on February 24, 2003, which "conditioned" the effect of the order on Slatkin not withdrawing his plea prior to sentencing. This Court granted Appellants leave to seek interlocutory appeal on June 18, 2003.

## III. STANDARD OF REVIEW

■ The Bankruptcy Court's evidentiary rulings are reviewed under an abuse of discretion standard. *In re Kim*, 130 F.3d 863, 865 (9th Cir.1997). The District Court reviews the Bankruptcy Court's conclusions of law de novo and its factual findings for clear error. *Id.* On a motion for partial summary judgment, this Court must view the evidence in the light most favorable to the party opposing the motion and "determine under a de novo standard whether there is no genuine issue of material fact, and whether the moving party was entitled to judgment as a matter of law." *In re New England Fish Co.*, 749 F.2d 1277, 1280 (9th Cir.1984).

## IV. DISCUSSION

### A. Admissibility of the Plea Agreement

■ The threshold question is, of course, whether Slatkin's Plea Agreement is admissible for purposes of the Trustee's partial summary judgment motion. The Plea Agreement is hearsay since it is being used for the truth of the matter asserted, namely that Slatkin ran a Ponzi scheme and had the actual intent to defraud his creditors. *See* Fed.R.Evid. 801(c) (" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.").

Inadmissible hearsay cannot be considered on a motion for summary judgment. *Blair Foods, Inc. v. Ranchers Cotton Oil*, 610 F.2d 665, 667 (9th Cir.1980).

The Bankruptcy Judge was unclear upon which exception to the hearsay rule she relied in considering the Plea Agreement. The Trustee, however, offers three exceptions to the hearsay rule upon which this Court could affirm, Federal Rules of Evidence 803(22), 804(b)(3), and 807. *See Padilla v. Terhune*, 309 F.3d 614, 618 (9th Cir.2002) ("We may affirm ... on any ground supported by the record, even if it differs from the reasoning of the [trial] court.").

■ The Trustee argues that the Plea Agreement is admissible under Federal Rule Evidence 803(22), which allows hearsay evidence of a "final judgment, entered after a trial or upon a plea of guilty (but not upon a plea of nolo contendere), adjudging a person guilty of a crime punishable by death or imprisonment in excess of one year, to prove any fact essential to sustain the judgment ...." However, at the time the Trustee's motion for partial summary judgment was heard, Slatkin had not yet been sentenced; therefore, the Plea Agreement had not been reduced to a final judgment. The Bankruptcy Court, rather than waiting until Slatkin had been sentenced, decided instead to make the order granting partial summary judgment in favor of the Trustee "provisional," in the sense that it would be vacated in the event that Slatkin withdrew his guilty plea prior to sentencing. *See* Amended Findings of Fact and Conclusions of Law, February 24, 2003, Appellants' Excerpts of Record, Ex. 35 at ¶ 22.

Whatever the wisdom of the Bankruptcy Court's "provisional order," Slatkin did not withdraw his guilty plea and was sentenced to 168 months in federal prison on

September 2, 2003. At that time, Slatkin's Plea Agreement was reduced to a final judgment and admissible, though hearsay, pursuant to Federal Rule Evidence 803(22). *See Scholes v. Lehmann,* 56 F.3d 750, 762 (7th Cir.1995) (finding plea agreement admissible under Rule 803(22) in a fraudulent transfer suit brought by receiver against various third parties). Thus, even had the Bankruptcy Court erred in admitting the Plea Agreement prior to Slatkin's sentencing, the error would be harmless. *See* Bankr.R. 9005 (adopting Federal Rule Civil Procedure 61(a) harmless error standard); *City of Long Beach v. Standard Oil Co.,* 46 F.3d 929, 936–37 (9th Cir.1995) (noting that reversal requires a showing of prejudicial error); *Benna v. Reeder Flying Service, Inc.,* 578 F.2d 269, 271 (9th Cir.1978) ("[N]ot all error is reversible error or error which requires a new trial. We are directed to 'disregard any error or defect in the proceedings which does not affect the substantial rights of the parties.' ").

■■ The Plea Agreement is also admissible under Federal Rule of Evidence 807, the "residual" or "catch-all" exception to the hearsay rule. Rule 807 allows the admission of statements "not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness ...." Moreover, "the statement must (1) be evidence of a material fact; (2) be more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (3) serve the general purposes of the Rules of evidence and the interests of justice by its admission into evidence." *United States v. Sanchez–Lima,* 161 F.3d 545, 547 (9th Cir. 1998). Courts have admitted guilty pleas pursuant to the residual exception to the hearsay rule. *See Hancock v. Dodson,* 958 F.2d 1367, 1372 (6th Cir.1992); *Estate of*

*Chlopek by Fahrforth v. Jarmusz,* 877 F.Supp. 1189, 1194–95 (N.D.Ill.1995).

Slatkin's plea was made under oath with the advice of a competent attorney and it subjected him to severe criminal penalties. Moreover, Judge Morrow appraised Slatkin of his rights and concluded that the plea was made "knowingly and voluntarily." Appellants' Excerpts of Record, Ex. 14 at 00422. Under these circumstances, Slatkin's Plea Agreement is admissible under Rule 807 as well.

Accordingly, the Bankruptcy Court did not abuse its discretion by relying on the Plea Agreement in granting the Trustee's motion for partial summary judgment. Since this Court finds that the Plea Agreement is admissible under Federal Rules of Evidence 803(22) and 807, the Court need not consider admissibility under Rule 804(b)(3).

**B. Preclusive Effect of Slatkin's Plea Agreement**

The primary issue on appeal is whether the Bankruptcy Court erred in determining that Slatkin's Plea Agreement had a preclusive effect in the adversary proceedings of his Chapter 11 Bankruptcy, establishing, as a matter of law, that Slatkin had the actual intent to "hinder, delay, or defraud" his creditors with respect to each and every transaction conducted with Appellants since 1986. In granting the Trustee's motion for partial summary judgment on the issue of Slatkin's intent to defraud, the Bankruptcy Court determined that Slatkin's guilty plea to mail fraud and wire fraud, and the factual basis for the plea, conclusively established that he had the intent to defraud his creditors within the meaning of California's fraudulent transfer law. Appellants dispute that the Plea Agreement could have such a far-reaching preclusive effect on their adversary proceedings.

### 1. Collateral Estoppel Effect of a Guilty Plea

■ The collateral estoppel effect of a guilty plea has been fairly well established by case law. First, courts have long held that for collateral estoppel purposes, a guilty plea and a conviction following trial are equivalent.[4] *See United States v. Bejar–Matrecios*, 618 F.2d 81, 83 (9th Cir. 1980) ("The general rule is that the doctrine of collateral estoppel applies equally whether the previous criminal conviction was based on a jury verdict or a guilty plea."); *Blohm v. Commissioner*, 994 F.2d 1542, 1554 (11th Cir.1993) ("Thus, for purposes of applying the doctrine of collateral estoppel, there is no difference between a judgment of conviction based upon a guilty plea and a judgment rendered after a trial on the merits."); *Gray v. Commissioner*, 708 F.2d 243, 246 (6th Cir.1983) ("A guilty plea is as much a conviction as a conviction following a jury trial."); *United States v. Podell*, 572 F.2d 31, 35 (2d Cir.1978); *Brazzell v. Adams*, 493 F.2d 489, 490 (5th Cir.1974); *Plunkett v. Commissioner*, 465 F.2d 299, 306 (7th Cir.1972). Courts also have routinely applied collateral estoppel in subsequent civil and criminal actions to establish material facts that were necessary to sustain a prior criminal conviction. *See Ivers v. United States*, 581 F.2d 1362, 1366–67 (9th Cir.1978); *Blohm*, 994 F.2d at 1554; *Gray*, 708 F.2d at 246; *Brazzell*, 493 F.2d at 490; *Plunkett*, 465 F.2d at 307.

■ However, the record makes clear that the Bankruptcy Court understood that it was not applying collateral estoppel in granting the Trustee's motion for partial summary judgment based upon the Plea Agreement. *See* Appellants' Excerpts of Record, Ex. 34 at 01609–10. Collateral estoppel requires that the party against whom it is asserted be a party, or in privity with a party, to the prior action. *United States v. Real Property Located at Section 18*, 976 F.2d 515, 518 (9th Cir. 1992). Here, Slatkin's Plea Agreement is being used against defendants in his Chapter 11 bankruptcy adversary proceedings who had no involvement with Slatkin's criminal case. Thus, while the doctrine employed by the Bankruptcy Court is one of preclusion, it cannot be said to be collateral estoppel.

### 2. Preclusive Effect of a Guilty Plea in Establishing the Fraudulent Intent of the Debtor

■ In making its ruling, the Bankruptcy Court cites to a number of cases that appear to stand for the proposition that a prior criminal conviction can have a preclusive effect in establishing the fraudulent intent of a debtor in a subsequent adversary proceeding, even with respect to claims brought against third-parties who had no involvement with the criminal proceedings. As provocative as this may appear at first glance, strong authority supports the reasoning behind giving a prior criminal conviction, even by way of a guilty plea, such a profound effect on subsequent bankruptcy proceedings with respect to a debtor's fraudulent intent.

The most significant of these cases is *Scholes v. Lehmann*, 56 F.3d 750 (7th Cir. 1995). *Scholes* involved a Ponzi scheme created by a man named Michael Douglas ("Douglas"). *Id.* at 752. Douglas formed three corporations and caused them to sell

---

4. Courts typically reject the argument that because plea agreements often result in lower sentences for the accused, their contents are somehow less reliable than facts established by a trial on the merits. *See, e.g., Brady v. United States*, 397 U.S. 742, 757–58, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). Courts will not " 'look behind (their) convictions,' " especially when the record demonstrates that the pleas were made knowingly and voluntarily." *Alsco–Harvard Fraud Litigation*, 523 F.Supp. 790, 801 (D.D.C.1981).

limited-partner interests to investors, representing that they would yield returns between ten and twenty percent per month. *Id.* While the corporations made some legitimate investments, the bulk of the funds were used by Douglas to fuel a Ponzi scheme. *Id.* Douglas pleaded guilty to fraud and was sentenced to twelve years in federal prison. *Id.* The Securities and Exchange Commission ("SEC") brought a civil suit against Douglas and his three corporations. *Id.* At the request of the SEC, the district court appointed a receiver for Douglas and the corporations to attempt to recover funds to be distributed to the Ponzi scheme victims. *Id.* at 752–53. The receiver sued a number of individuals, including an investor in the Ponzi scheme who made a "return" on his investment with Douglas. *Id.* at 753. Judge Posner, writing for the Seventh Circuit, held that the district court did not err in relying on Douglas' plea agreement, on a motion for summary judgment, to establish that Douglas had the actual intent to defraud his creditors. *Id.* at 762.

Judge Posner in *Scholes* reasoned that Douglas was not permitted to "backpedal" from the admissions in his plea agreement, because "just as an affidavit in which a witness tries to retract admissions that he made earlier in his deposition is normally given no weight in a summary judgment proceeding, so a witness should not be permitted by a subsequent affidavit to retract admissions in a plea agreement." *Id.* (citations omitted). As such, in the receiver's fraudulent transfer suit against the defendant investor, there was no genuine issue of material fact as to Douglas' fraudulent intent.

A number of courts have extended the reasoning in *Scholes* to the bankruptcy context. In *Martino v. Edison Worldwide Capital (In re Randy)*, a bankruptcy trustee moved for summary judgment to recover fraudulent conveyances from defendant brokers who received commissions for bringing new investors into the debtor's Ponzi scheme. 189 B.R. 425, 429 (Bankr. N.D.Ill.1995). *In re Randy* held that the debtor's actual intent to defraud his investors "was established by the jury verdict against him in the criminal proceeding" and granted summary judgment in favor of the trustee. *Id.* at 439.

Likewise, *Emerson v. Maples (In re Mark Benskin & Co.)* involved a bankruptcy trustee's attempt to recover fraudulent transfers in the aftermath of a collapsed Ponzi scheme. 161 B.R. 644 (Bankr. W.D.Tenn.1993), *aff'd*, 1995 WL 381741, 1995 U.S.App. LEXIS 16053 (6th Cir. June 26, 1995). Also in the context of an adversary proceeding, the bankruptcy court, after holding a trial, held that "[t]he debtors' intent to defraud creditors was established by the guilty pleas to the related criminal charges and preclusive effect may be given to those guilty pleas as factual findings to the extent that the debtors' intent to defraud creditors is required in this adversary proceeding." *Id.* at 648.

Again, in *Floyd v. Dunson (In re Rodriguez)*, after a failed Ponzi scheme and in the context of an adversary proceeding, the bankruptcy court held that "the criminal conviction of Ms. Rodriguez based on the debtors' operation of a Ponzi scheme conclusively establishes fraudulent intent, and precludes the defendant from relitigating this issue." *In re Rodriguez*, 209 B.R. 424, 433 (Bankr.S.D.Tex.1997). The bankruptcy court granted the trustee's motion for summary judgment, finding that "[a]s a matter of law, the fraudulent transfers were made to the defendant with the actual intent to hinder, delay or defraud later investors in debtors' scheme." *Id.*

In the absence of direct authority on the matter, the Court adopts the reasoning of *Scholes* and the bankruptcy decisions dis-

cussed *supra.* Thus, Slatkin's Plea Agreement can be used to establish his actual intent to defraud his creditors in a subsequent bankruptcy adversary proceeding.

**a. Fraudulent Intent is a Subjective Question and the Plea Agreement is Direct Evidence of Intent**

 Appellants main contention on appeal is that the Bankruptcy Court erred in giving the Plea Agreement such a broad preclusive effect as to foreclose any opportunity for Appellants to offer evidence disproving that Slatkin had fraudulent intent with respect to the specific transactions in which they were involved. However, there is good reason for giving the Plea Agreement such weight. The issue of a debtor's intent in a fraudulent transfer avoidance action is a subjective inquiry. *See Plotkin v. Pomona Valley Imports (In re Cohen),* 199 B.R. 709, 716 (9th Cir. BAP 1996) ("The focus in the inquiry into actual intent is on the state of mind of the debtor.").

While typically, fraudulent intent would need to be established using circumstantial evidence, here we have *direct* evidence, in the form of an admission by Slatkin, that he had the actual intent to defraud his creditors. Slatkin's Plea Agreement states:

> Beginning in or about 1986, and continuing until in or about May 2001 … SLATKIN, knowingly and with intent to defraud, planned and executed a scheme to defraud approximately 800 investors throughout the United States of over $593 million, and to obtain money and property from such investors by making and causing materially false statements to be made to such investors and by concealing material facts from them.

Appellants' Excerpts of Record, Ex. 3 at 00125. Furthermore, Slatkin pleaded guilty to mail fraud (18 U.S.C. §§ 1341, 1342), and wire fraud (18 U.S.C. §§ 1343, 1342), both of which include as elements the creation and execution of a fraudulent scheme and intent to defraud. *See* Appellants' Excerpts of Record, Ex. 3 at 00102; *Schreiber Distrib. Co. v. Serv–Well Furniture Co., Inc.,* 806 F.2d 1393, 1400 (9th Cir.1986). Slaktin's Plea Agreement, therefore, is direct evidence of his actual intent to defraud.

**b. Existence of a Ponzi Scheme Can Also Establish Fraudulent Intent**

Slatkin's admission that he was operating a Ponzi scheme between 1986 and 2001 further supports the conclusion that he had the actual intent to defraud his creditors. According to the Ninth Circuit, "the mere existence of a Ponzi scheme, which could be established by circumstantial evidence, has been found to fulfill the requirement of actual intent on the part of the debtor." *Hayes v. Palm Seedlings Partners (In re Agric. Res. & Tech. Group, Inc.),* 916 F.2d 528, 536 (9th Cir.1990). The connection between a Ponzi scheme and actual intent to defraud is obvious:

> One can infer an intent to defraud future undertakers from the mere fact that a debtor was running a Ponzi scheme. Indeed, no other reasonable inference is possible. A Ponzi scheme cannot work forever. The investor pool is a limited resource and will eventually run dry. The perpetrator must know that the scheme will eventually collapse as a result of the inability to attract new investors. The perpetrator nevertheless makes payments to present investors, which, by definition, are meant to attract new investors. He must know all along, from the very nature of his activities, that investors at the end of the line will lose their money. Knowledge to a substantial certainty constitutes intent in the eyes of the law, and a debtor's knowledge that future investors will not

be paid is sufficient to establish his actual intent to defraud them.

*Merrill v. Abbott (In re Indep. Clearing House Co.),* 77 B.R. 843, 860 (D.Utah 1987) (citations omitted); *see also In re Cohen,* 199 B.R. at 717 ("Proof of a Ponzi scheme is sufficient to establish the Ponzi operator's actual intent to hinder, delay, or defraud creditors for purposes of actually fraudulent transfers ...."); *In re Randy,* 189 B.R. at 439 (proof of intent to run a Ponzi scheme fulfills actual intent to hinder, delay, or defraud); *In re Benskin,* 161 B.R. at 650 (statutory language makes clear that intent to defraud can be inferred merely from the operation of a Ponzi scheme); *In re Taubman,* 160 B.R. 964, 983 (Bankr.S.D.Ohio 1993) ("It is appropriate to find actual intent from the Debtor's active participation in a ponzi scheme.").

Specifically, Slatkin admitted in his Plea Agreement that:

(1) "SLATKIN did not use the vast majority of investor funds to purchase securities and cash instruments as represented on account statements, but instead disbursed these funds to other investors as fraudulent returns, diverted funds for his own personal benefit, and dissipated funds on many speculative, undisclosed, and ultimately unprofitable investments in which SLATKIN had a beneficial interest ...." Appellants' Excerpt of Record, Ex. 3 at 00126.

(2) "SLATKIN would fabricate the percentage of return to be represented to investors and would devise a false trading history for various securities." *Id.*

(3) "SLAKTIN failed to maintain separate accounts for investors but rather commingled investor funds and treated them as his personal funds ...." *Id.*

(4) "[B]ecause SLATKIN's investments did not generate sufficient income to meet investors' periodic requests for payments, SLATKIN used newly invested funds from some investors to pay other investors. SLATKIN intended these payments to induce existing investors both to entrust him with new funds and to expand his pool of investors through referrals." *Id.*

From the facts admitted in his Plea Agreement, it is clear that Slatkin had the requisite fraudulent intent because he explicitly admitted to having the intent to defraud his creditors and to operating a Ponzi scheme between 1986 and 2001.

**C. No Evidence Creating a Genuine Issue of Material Fact as to Slatkin's Fraudulent Intent Exists on the Record**

Appellants further argue that there exists the possibility that some of the transactions made by Slatkin between 1986 and 2001 may have been legitimate. Appellants, therefore, seek the opportunity to show that Slatkin may have lacked fraudulent intent with respect to some of his investments, particularly those made on behalf of Appellants using their funds. There is absolutely no evidence in the voluminous record that this possibility exists.

The Reply Brief of "Certain Appellants" cites a number of Slatkin's deposition statements made in November 2003 and January 2004 that purport to evince the possibility that Slatkin may not have had the requisite fraudulent intent with respect to all of the transactions he undertook between 1986 and 2001. But the passages cited by Certain Appellants do not contradict anything admitted by Slatkin in his Plea Agreement and, thus, certainly fail to create a triable issue of material fact. In fact, numerous excerpts from the very same depositions cited by Certain Appellants contain statements by Slatkin that confirm, rather than disprove, that he was operating a Ponzi scheme and had the

actual intent to defraud his creditors.[5]

That Slatkin "hoped" to pay his investors back does not create a genuine issue of material fact as to his fraudulent intent when countless other excerpts from the same depositions clearly convey that Slatkin understood he was operating a Ponzi scheme and that his assets were not likely to cover the principal of most of his investors. Moreover, the fact that Slatkin may have invested some of the funds in securities does not mean some of his transfers to Appellants were "legitimate"; Slaktin clearly co-mingled the funds of all of his investors and admitted that his transac-

tions were largely driven, not by investment criteria, but by the need to pay off investors from whatever source possible to avoid exposing his fraudulent scheme.[6] The excerpts from Slatkin's depositions cited by Certain Appellants do not create a triable issue of fact as to Slatkin's fraudulent intent, and in fact, tend to bolster the argument that any further discovery would be futile.

## D. Denial of Further Discovery

■■■■■ Appellants also argue that the Bankruptcy Court abused its discretion in denying Appellants' Rule 56(f) motions for

---

5. (1) "Q. And when you had money that was invested in the market, would it have been good investment practice to sell invested money—to sell securities to obtain money when you had what you described as cash on hand to pay people back?

. . . .

THE WITNESS: The reason I'm reacting a little bit is because I wasn't thinking of it that way. My viewpoint was, I needed to get people their money.

So wherever the money was that I needed to get back to them, appropriately it would have been on hand or new money. It was paid to them in as timely a fashion as possible in part to avoid suspicion.

So if I needed to sell something, I would do it, if—if I didn't have the money elsewhere. I think that answers the question. I don't know if it was good investment practice or not. I—I—That wasn't my criteria at the time. Was it done? Yes." Devine Decl. in Support of Reply, Ex. 2 at 0101–02.

(2) "Q. Did you believe at the time that Earthlink ran up in value that you'd be able to pay everybody off?

A. No.

I—I knew that the—Just to answer the question, I mean—Well, I mean, I'll wait till you ask me ... I never had the—the sense that I had enough money to—to make good on what my promises were." Id. at 0107.

(3) "Q. Some of the money that you were receiving from new investors was going into new investments?

A. Yes, some of the money was.

Oh, I might add, it was a relatively small amount." Id. at 0109.

(4) "Q. Did you know at the time that you were taking money from other people to invest for them that you were, in fact, operating a Ponzi scheme?

A. I didn't know it by that term, but I understood that—I knew what I was doing. I was taking money in from individuals after promising them to invest it. I did not invest it as a rule. Used the money for business purposes and primarily to pay off other investors.

And I falsified reports that I gave these people to maintain their confidence so they wouldn't take their money out, and then lied to them about the value of their accounts, and put together a—a scheme of keeping the program going through assistance of other people and through my own activities, which I think results in what was called a Ponzi scheme." Id., Ex. 5 at 0809–0810.

6. Thus, this Court rejects Appellants Johnsons' and Appellants Hutchins' argument that Slatkin's tax returns somehow create a genuine issue of material fact as to his fraudulent intent. The fact that Slatkin reported income to the Internal Revenue Service and delineated the capital gains of certain investors is not inconsistent with Slatkin's massive Ponzi scheme. The undisputed evidence reflects that investor funds were co-mingled. That a small percentage of those funds were used for legitimate investments does not create an issue of fact as to whether the Ponzi scheme itself existed and it certainly does not require a court to undertake the difficult, perhaps impossible task of determining whether those funds came from the sale of securities or from the principal of other investors.

a continuance to conduct further discovery.[7] But this Court agrees that Slatkin's Plea Agreement is conclusive in establishing his fraudulent intent. Further discovery could never alter the contents of the Plea Agreement and not even Slatkin can retract his admissions. In addition, as discussed *supra*, Slatkin's depositions taken subsequent to the hearing on the motion only support the Bankruptcy Court's determination that further discovery would be futile. This Court can only find abuse of discretion "if the movant can show how allowing additional discovery would have precluded summary judgment." *Qualls by & Through Qualls v. Blue Cross*, 22 F.3d 839, 844 (9th Cir.1994). Accordingly, the Bankruptcy Court did not abuse its discretion in denying Appellants' Rule 56(f) motion for a continuance, nor were Appellants denied Due Process.

## E. Whether Slaktin is a Stockbroker is Not an Issue on Appeal

■ Appellants Michael and Colleen Baum make the additional argument that the Bankruptcy Court erred in granting the Trustee's motion for partial summary judgment prior to determining whether Slatkin was a "stockbroker" as understood by the Bankruptcy Code. This Court finds that a determination of whether Slatkin was or was not a stockbroker is not necessary in the context of this interlocutory appeal, which requests only a review of the narrow issue of Slaktin's fraudulent intent. Certainly if the Bankruptcy Court erred in conducting a Chapter 11 reorganization rather than a Chapter 7 stockbroker liqui-

dation, the consequences would be significant for Appellants and the Trustee alike. However, Appellants can appeal that issue, and any others, when and if a final judgment is rendered against them in their adversary proceedings.

## V. CONCLUSION

Courts have consistently adhered to the policy of protecting all investors that have been defrauded in a Ponzi scheme equally. In other words, Courts have utilized fraudulent transfer statutes to prevent earlier investors in a Ponzi scheme from profiting at the expense of later investors, preferring a ratable distribution of funds derived through fraud. Slatkin admitted in his Plea Agreement that he had the actual intent to defraud his creditors between 1986 and 2001 and that he was operating a Ponzi scheme during that period of time. Nothing in the record appears to contradict this conclusion; instead, the record reflects in great detail the lengths to which Slatkin went to perpetuate his massive fraudulent operation.

Fraudulent intent is a subjective question that typically must be established using circumstantial evidence. Here, however, Slatkin has directly and explicitly admitted his actual fraudulent intent in the context of an elaborate Ponzi scheme. Only Slatkin himself can attest directly as to his intent, and not even Slatkin himself can now retract his admissions in the Plea Agreement. *Scholes*, 56 F.3d at 762 ("[A] witness should not be permitted by a sub-

---

**7.** Appellants Arthur Colaianni, Alessandra Columbo, James and Kaye Conley, Judith De Saldarriaga, and Andrew and Tara Kitt file a separate brief arguing that the proper standard of review is de novo because the Bankruptcy Court failed to address the Rule 56(f) motions at all and in fact, did not actually rule on them. However, a decision on a Rule 56(f) request need not be explicitly stated.

*Qualls by & Through Qualls v. Blue Cross*, 22 F.3d 839, 844 (9th Cir.1994). This Court finds that the Bankruptcy Court implicitly ruled that additional discovery would not serve to defeat the Trustee's partial summary judgment motion since it found that the Plea Agreement conclusively established Slaktin's intent to defraud. Thus, the proper standard of review is abuse of discretion. *Id.*

sequent affidavit to retract admissions in a plea agreement."). Finally, plea agreements, with the appropriate safeguards such as those present in Slatkin's criminal proceeding, are conclusive as to those facts that were necessary for conviction just as if there were a trial on the merits. This Court, therefore, is convinced that the Bankruptcy Court did not err in giving Slatkin's Plea Agreement preclusive effect in Appellants' adversary proceedings as to the narrow issue of Slatkin's actual intent to hinder, delay, or defraud his creditors. **AFFIRMED.**

**IT IS SO ORDERED.**